603 So.2d 625 (1992)
George PIERCE and Linda Pierce, Appellants,
v.
J.W. CHARLES-BUSH SECURITIES, INC., f/k/a Alan Bush Brokerage Co.; and David Freudenberg, Appellees.
No. 90-3120.
District Court of Appeal of Florida, Fourth District.
August 5, 1992.
*626 Warren B. Brams and Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellants.
Roy E. Fitzgerald of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellees.
EN BANC
FARMER, Judge.
We confront, as a full court, whether to recede from our decision in Loxahatchee River Environmental Control District v. Guy Villa & Sons, Inc., 371 So.2d 111 (Fla. 4th DCA 1978), cert. denied, 378 So.2d 346 (Fla. 1979). The issue attracting our attention is whether an arbitrator (or arbitration panel) may, with the consent of all parties, determine entitlement to attorney's fees for claims that the parties have explicitly consented to arbitrate. We now conclude that there is no reason not to allow parties to submit attorney's fees claims to arbitration, if they so desire, and that the applicable statutes do not evidence a legislative intent to require that all attorney's fees be determined by a judge in a court proceeding.
The facts of this case are straightforward. The Pierces brought an action against J.W. Charles-Bush Securities Inc. [Bush] and Freudenberg, alleging violations of the Securities Exchange Act of 1934, violations of section 517.301, Florida Statutes (1989), common law fraud, breach of fiduciary duty, breach of contract, and negligence. All of these claims arose from a stock broker's account that the Pierces maintained with Bush, which was itself governed by a written account agreement between the parties. After the federal claims were dismissed, the court ordered arbitration of all remaining claims in accordance with an arbitration provision in the account agreement.
During the course of the arbitration proceedings, which lasted for six days, the parties stipulated on the record that the arbitrators would also determine the issue of entitlement to attorney's fees. Ultimately, the arbitrators determined that the Pierces were entitled to no damages on any *627 of their claims. The arbitrators then expressly decided that "[e]ach party shall bear its own attorneys' fees and costs." Their decision thus exonerates the Pierces from paying attorney's fees to their prevailing adversaries.
Notwithstanding the arbitrators' decision, in its motion for confirmation of the award Bush prayed for an award of attorney's fees for defending the entire action. Bush argued that under our Loxahatchee decision arbitrators have no power to decide matters relating to attorney's fees and that the arbitration of fees was unenforceable. It cited the provision in the account agreement to the effect that, in any legal action arising from the agreement, the prevailing party would be entitled to attorney's fees and argued that the provision required an award of fees because it prevailed on all of the Pierces' claims. The trial court agreed with Bush, citing Loxahatchee. This appeal followed.
We turn to our holding in Loxahatchee. The arguments there were summed up by Judge Downey in his usual trenchant manner:
Appellant contends that the judgment of confirmation should be reversed because the arbitrators had no power even by stipulation to adjudicate entitlement to or amount of attorney's fees. On the other hand, appellees argue that, even if the arbitrators did not have the authority to determine attorney's fees in the first instance, if the parties stipulate that a fee may be awarded by the arbitrators, they may do so.
371 So.2d at 112. This court's view of the controlling law at that time was:
In this case Section 682.02, Florida Statutes (1975), provides for the submission of any controversy to arbitration; but that broad grant of authority is subsequently limited by Section 682.11, wherein the arbitrators are expressly authorized (unless the agreement provides otherwise) to determine the arbitrators' and umpires' fees and expenses, "together with other expenses; not including counsel fees...." (Emphasis added.) [e.o.]
371 So.2d at 113. We went on to hold that "[t]he proper place to determine the entitlement to and amount of attorney's fees authorized by statute or contract is in the circuit court upon application for confirmation of the award." Id.
Since 1978 when Loxahatchee was decided, the judicial perspective on arbitration has undergone a change. American courts had earlier adopted the English common law view that arbitration agreements could not be enforced. See, e.g., Pacific Mills v. Hillman Garment, Inc., 87 So.2d 599 (Fla. 1956) (agreement to arbitrate could not be specifically enforced by injunction). Generally, this view was based on the notion that such agreements constituted an attempt to oust courts of their lawful jurisdiction.
A series of United States Supreme Court decisions since then began a change of perception, however. In Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court announced an invariable rule for cases covered by the United States Arbitration Act [USAA], 9 U.S.C. sections 1-14 (1982):
The [USAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues, should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.
460 U.S. at 24-25, 103 S.Ct. at 941.
That was followed less than a year later with the decision in Southland Corporation v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). At issue there was a provision of the California Franchise Investment Law which required judicial consideration of claims brought under the state law, even if the parties had agreed in writing to arbitrate such issues. Once again, the Court invoked a national policy favoring arbitration. It expressly noted that one purpose of USAA was to address the failure of state arbitration statutes to require enforcement of arbitration agreements. The Court said:

*628 In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. We hold that [section] 31512 of the California Franchise Investment Law violates the Supremacy Clause.
465 U.S. at 16, 104 S.Ct. at 861. Hence, the Court's holding was that USAA withdrew any power of the states to require a judicial forum for the resolution of claims that the contracting parties had agreed to resolve by arbitration.
Keating involved a statute that exemplifies hostility to arbitration by deciding that certain statutory claims are inappropriate for non-judicial resolution. In a steady drumbeat of cases since Keating, the Court has reversed a number of decisions precluding arbitration for various statutory claims. In Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Court rejected a long line of cases which had held that arbitration was inappropriate, and thus could not be compelled even if agreed, for antitrust and RICO claims. Similarly, in Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Court ended the long held belief that securities fraud claims, as here, under the Securities Exchange Act of 1934 and rule 10b-5 cannot be ordered to agreed arbitration. And, in Gilmer v. Interstate/Johnson Lane Corporation, ___ U.S. ___, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Court found no exemption even for civil rights claims, in that case under the Age Discrimination in Employment Act. If civil rights, antitrust and securities fraud claims are not inappropriate for arbitration, it is very difficult to imagine a civil claim in which an agreement to arbitrate would not be enforced. See also Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); and Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).
In this case the arbitration agreement is included in a stockbroker's account agreement. Although neither party has raised the subject, there is a question in our minds as to whether the margin account has been captured by USAA section 2, which applies the Act's provisions to any "contract evidencing a transaction involving commerce," as defined in USAA section 1. Under the previously cited Supreme Court decisions, we have little doubt that Congress has barred the states from refusing to enforce arbitration awards under USAA which determine entitlement to attorney's fees. The record being silent, however, on the application of USAA, we proceed to consider whether the comparable Florida law on arbitration, properly understood, precludes agreed arbitral determination of fee claims.
Our own supreme court recently held that "arbitration is a favored means of dispute resolution and courts indulge every reasonable presumption to uphold proceedings resulting in an award." Roe v. Amica Mut. Ins. Co., 533 So.2d 279, 281 (Fla. 1988). Indeed, we ourselves recently applied that very principle. Ronbeck Const. Co., Inc. v. Savanna Club Corp., 592 So.2d 344, 346 (Fla. 4th DCA 1992). In fact we went even further and held that under the Florida Arbitration Code [FAC][1] courts should resolve all doubts in favor of arbitration rather than against it. Following the lead of the Third District in Sabates v. International Medical Centers, Inc., 450 So.2d 514 (Fla. 3d DCA 1984), we rejected the notion that civil theft claims were so distinctive that agreed arbitration would have been against public policy.
The premise of Loxahatchee is that attorney's fees are somehow different. To reach that conclusion, we relied on Tassinari v. Loyer, 189 So.2d 651 (Fla. 2d DCA 1966), and quoted the following:
The statutory reference to counsel fees is to except it from the term "other expenses." It should be remembered that *629 arbitrators are generally businessmen chosen for their expertise in the particular subject matter of the suit and to exclude from their domain the consideration of what is a reasonable fee for legal services is quite logical. That the Legislature chose to exclude this question from the arbitrator's determination is a credit to its wisdom.
189 So.2d at 653. The text of the statutory provision there, as here, has not been changed, so we turn to it. FAC section 682.11 provides:
682.11 Fees and expenses of arbitration.  Unless otherwise provided in the agreement or provision for arbitration, the arbitrators' and umpire's expenses and fees, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award. [e.s.]
We apparently then read that text as a legislative determination not to allow parties to agree to submit attorney's fees claims to arbitrators. To do so, we had to give an unusually restrictive reading to the words "unless otherwise provided in the agreement or provision for arbitration." We necessarily had to read those words as having no effect on the later words "not including counsel fees", so that even an agreement of the arbitrating parties could not forego a judicial forum for that single issue. Under the current policy of broad construction in favor of arbitration, such a narrow and restrictive reading is certainly questionable.
Bush argues that Loxahatchee amounts to a clear holding that it is a jurisdictional power implicated by the above text. In its words:
The law is clear in Florida that parties to arbitration cannot enter into a stipulation which divests the circuit court of this jurisdiction. The circuit court has exclusive subject matter jurisdiction over the decision as to both entitlement and calculation of attorney's fees.
Brief of Appellee, at 3. We are thus forced to confront directly the implications of our holding in Loxahatchee: It manifests the old hostility to arbitration agreements, at least as to counsel fees, by construing the agreement to arbitrate such fees as an attempt to oust a court of jurisdiction. The decision, in short, is an anomalous perpetuation of the English rule on this issue.[2]
The reasons for reading the statute this way are surely no longer valid, even if they once were.[3] There is no evidence in this record as to the background of the three arbitrators who presided over this case. On the other hand, there is no evidence that lawyers typically do not actually serve as arbitrators, or that they are not available to serve on the kinds of claims here.[4] Thus, even assuming that lawyers really are needed to assess attorney's fee claims, there is no basis to assume that they are not already serving as arbitrators. Hence, the necessity for attorneys to serve as the arbitrators on fee questions is not so clear that reasonable minds cannot differ.
Moreover if that principle were to be applied generally, only engineers could decide construction defect arbitrations; only stockbrokers could decide claims against brokers; and so on. The nature of the claim would thus determine the primary *630 occupation of the arbitrators. The principle thus works a substantial shrinking of the pool of arbitrators in individual cases. One would ordinarily expect to find unmistakable statutory, textual support for such an antithetical limitation in a statute so broadly remedial in purpose. Yet, there is nothing in the statute so requiring.
Even if only businessmen were to serve as arbitrators, it would be nearly impossible to find a businessman today who does not regularly incur attorney's fees as an ongoing business expense. There is no reason to suppose that they are not wellacquainted, as the payors of legal fees, with the rates and amounts charged generally in their community. In fact, one may well wonder how businessmen arbitrators could be any less knowledgeable about legal rates than they are about the substantive provisions of the law that govern the contract, personal injury, or other claims they arbitrate.
Apart from the absence of clear statutory support for judges/attorneys as arbitrators in fee cases is the overall purpose of the fee provision. Attorney's fees to prevailing parties, whether authorized by contract or by statute, are not designed for the benefit of the attorney. Instead, they are intended to indemnify the party who was required to employ an attorney because of the other party's noncompliance with the contract or statute.
While the losing party has agreed to pay, or should be required to pay, only a reasonable fee, that fact does not logically imply that only a judge or a lawyer arbitrator should assess the reasonability of the fees incurred by the prevailing party. One of the features of arbitration is that the decision-maker is not a judge and is not required unless the parties so specify, even to be an attorney. By agreeing to arbitration, the parties presumably have decided to give up the surer-footed determination of the law that a judge would bring, in favor of the speedier and less costly determination that arbitration would bring.[5] To foist a judicial tribunal on them in spite of their agreement is an obvious impairment of their right to so agree, but without perceptible societal benefit.
The essential reason for preferring arbitration over litigation in a court is that arbitration is faster and cheaper. Limiting the determination of attorney's fees for arbitration to a judicial forum, however, simply adds time and expense to the chosen remedy. If the parties have expressly decided for themselves to have arbitrators determine entitlement and the amount of such fees, they have thereby manifested an intention in the clearest way possible that they desire to avoid that very additional time and expense. To deny them that savings, especially because of some now discredited notion about the inviolability of judicial turf, is  well, certainly not unambiguously required by anything in the arbitration law.
Any legislative mandate to force contracting parties to a courtroom for legal fees should thus be stated in language far more clearly requiring that result than the current text of FAC section 682.18(1), which provides in pertinent part:

The making of an agreement or provision for arbitration subject to this law and providing for arbitration in this state shall, whether made within or outside this state, confer jurisdiction on the court to enforce the agreement or provision under this law, to enter judgment on an award duly rendered in an arbitration thereunder and to vacate, modify or correct an award rendered thereunder for such cause and in the manner provided by law. [e.s.]
If we are to take this provision literally, and there is no apparent reason not to do so, then obviously the contracting parties already have the power to affect the jurisdiction of the court by their own agreement.
If the legislature has allowed them to confer jurisdiction by their own agreement *631 to enforce an arbitration award, there is no reason to suppose that the legislature did not also intend for the contracting parties to decide for themselves precisely what claims to submit to the arbitrators. To hold otherwise is, at least without clear textual support, to add by judicial construction a new provision to a statute that is at war with its general purpose and contravenes the words already used by the legislature. Hence, appropriately read, FAC section 682.11 precludes the arbitrators from awarding fees, but not when the parties have specifically agreed to submit the fee issue to arbitration.
It is suggested that this conclusion is contrary to Insurance Company of North America v. Acousti Engineering Company of Florida, 579 So.2d 77 (Fla. 1991). But the only issue decided by the supreme court in that case was:
whether a subcontractor or owner who prevails in arbitration proceedings against a contractor or its surety on the construction payment or performance bond is entitled to recover, from the surety, an award of attorney's fees for fees incurred during arbitration.
579 So.2d at 78. Three cases had been consolidated to resolve a conflict in decisions among the district courts of appeal.[6] In all three cases there was no agreement to attorney's fees; nor was there any arbitral determination of attorney's fees. The right to attorney's fees arose under section 627.428, Florida Statutes (1991), rather than by agreement. Other district courts had disagreed on whether fees under that statute could be awarded for arbitration, when there had been no litigation in court. In all three cases the insurance company paid the arbitration award without an order of a court compelling it to do so, and the district court had held that fees could be awarded under section 627.428 for the arbitration.
The supreme court adopted the Second District's en banc decision in Fewox v. McMerit Construction Co., 556 So.2d 419 (Fla. 2d DCA 1989), as its own. Fewox, in turn, decides only that nothing in FAC section 682.11 precludes awards of fees under section 627.428 for the arbitration proceeding, that section 627.428 encompasses arbitration, and that section 627.428's requirement of a judgment or decree is satisfied when the losing carrier pays the award. In dicta, Fewox adds the observation that arbitration cannot decide fee claims, presumably referring, not to awards of contractual fees, but only to statutorily imposed fees. It takes little reflection to see that the supreme court's decision is limited to a quite different issue than the one we face here. Nothing in it deals with whether the parties may confer jurisdiction on an arbitration panel to decide questions of attorney's fees.
In Fridman v. Citicorp Real Estate, Inc., 596 So.2d 1128 (Fla.2d DCA 1992), the Second District went beyond Fewox and expressly held that parties could not agree to have arbitrators determine fees, in that case for a mortgage foreclosure proceeding. Citing Fewox, the court recalled its dicta that "arbitrators are generally businessmen chosen for their expertise in the particular subject matter and have no expertise in determining what is a reasonable attorney's fees." [sic] 596 So.2d at 1129. That language originated in Tassinari, and we used it in our Loxahatchee decision. It is thus obvious that our decision today is in conflict with Fridman, and we so certify.
We therefore recede from Loxahatchee. We now hold that the parties to an arbitration agreement may confer jurisdiction on the arbitration panel to decide entitlement to attorney's fees and assess the agreed fee. We therefore reverse the decision of the circuit court and remand for the entry of an order confirming the denial of prevailing party attorney's fees to Bush.
REVERSED AND REMANDED WITH DIRECTIONS.
*632 GLICKSTEIN, C.J., and DOWNEY, ANSTEAD, LETTS, DELL, GUNTHER, STONE, and WARNER, JJ., concur.
HERSEY and POLEN, JJ., concur in result only without opinion.
GARRETT, J., recused.
NOTES
[1] Sections 682.01-682.22, Florida Statutes (1991). All references to the Florida Arbitration Code [FAC] refer to the 1991 official statutes.
[2] It is curious indeed that we reject the English rule on attorney's fees generally, whereby the losing party always pays the legal fees of the prevailing party, but we retain the English rule as to arbitration of prevailing party attorney's fee awards.
[3] One might be tempted to observe that the construction we placed on FAC section 682.11 in 1978 has been around for 14 years and that, if we misread it, the legislature has not seen fit to alter the text of the statute. But we do not occupy the same function as the Florida Supreme Court, and our decisions are not authoritative statewide as its decisions are. It is thus quite reasonable to draw no inference from legislative inaction as regards a decision of a district court, for the legislature may simply have preferred to await the supreme court's more final and unavoidable word on the meaning of its text.
[4] Indeed, see Fridman v. Citicorp Real Estate, Inc., 596 So.2d 1128 (Fla.2d DCA 1992), where the three arbitrators were all attorneys, and the sole issue submitted to them was attorney's fees. Concededly, the principal dispute there was a mortgage foreclosure, not allegations of mis- and malfeasance as to a stockbroker's account.
[5] We find no evidence in the statutory text that the legislature thought the parties competent to decide to send a dispute about their substantive rights and duties to arbitration, but not to send a question about the monetary cost of presenting that claim to the arbitrators.
[6] The three consolidated cases were Insurance Company of North America v. Acousti Engineering Co., 549 So.2d 790 (Fla. 5th DCA 1989); Fewox v. McMerit Construction Co., 556 So.2d 419 (Fla.2d DCA 1989); and Park Shore Development Co. v. Higley South, Inc., 556 So.2d 439 (Fla.2d DCA 1990).