Richard A. DAVIS, Plaintiff–Appellee,

v.

PRUDENTIAL SECURITIES, INC. f/k/a Prudential–Bache Securities, Incorporated, Defendant–Appellant.

Richard A. DAVIS, Plaintiff–Appellant,

v.

PRUDENTIAL SECURITIES, INC., f/k/a Prudential–Bache Securities, Incorporated, Defendant–Appellee.

Nos. 93–4585, 93–4653.

United States Court of Appeals, Eleventh Circuit.

July 31, 1995.

Brian D. Elias, Christopher L. Kurzner, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, FL, Thomas J. Kavaler, Cahill Gordon & Reindel, New York City, for appellant in No. 93–4585 and appellee in No. 93–4653.

Keith E. Hope, Michael A. Hanzman, Hanzman & Criden, P.A., Miami, FL, for appellee in No. 93–4585 and appellant in No. 93–4653.

Before BIRCH and DUBINA, Circuit Judges, and JOHNSON, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellant Prudential Securities, Inc. ("PSI") appeals the district court's judgment confirming an award of punitive damages made by an arbitration panel to Appellee Richard A. Davis ("Davis"). PSI contends that the arbitrators lacked the authority to award punitive damages and that the confirmation of the punitive damages award violates its due process rights. Davis cross-appeals, arguing that the district court erred in confirming the arbitrators' ruling that each party was to bear its own attorneys' fees. For the reasons that follow, we affirm that portion of the district court's judgment confirming the punitive damages award, vacate the district court's order on attorneys' fees and remand the case for consideration of the attorneys' fees issue on the merits.

## I. BACKGROUND

In 1985, Davis, a Florida resident, opened an investment account with PSI, a Delaware corporation with its principal place of business in New York, through Peter Rukrigl ("Rukrigl"), an account executive at PSI's Miami office. Davis signed an account agreement, which provided in pertinent part:

> This Contract shall be governed by the laws of the State of New York.... Any controversy arising out of or relating to my account ... shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association ["AAA"] or the Board of Governors of the New York Stock Exchange as I may elect.

Davis alleged that despite his stated desire for "low risk, high grade" investments, PSI recommended and sold to him $800,000.00 worth of highly speculative limited partnerships. Davis claimed that this conduct caused him to suffer severe financial damages, including the loss of capital in his account and the loss of a reasonable rate of return on his funds. Thus, in 1991, Davis initiated an arbitration before the AAA against PSI and Rukrigl, asserting claims for fraud, breach of fiduciary duty and negligence, and alleging violations of federal securities laws and Florida's Blue Sky Laws, Fla.Stat.Ann. § 517.011 et seq. (West 1988). Davis sought relief including compensatory damages, punitive damages, recision, prejudgment interest, and costs. Davis did not claim attorneys' fees, and neither party presented any evidence or argument on the issue of attorneys' fees. After the arbitration hearing, the arbitration panel awarded to Davis compensatory damages under Section 517.011 et seq. in the amount of $483,684.00 and punitive damages in the amount of $300,000.00. The panel's award also stated that "each party [was] to bear all of its own additional cost [sic] and attorneys' fees."

Pursuant to the account agreement, Davis sought to have a judgment entered upon the award in a state court in Dade County, Florida. Davis filed three pleadings: (1) a petition for confirmation of the award; (2) a motion for attorneys' fees; and (3) a motion for modification or correction of the award or, in the alternative, a motion to vacate the award only to the extent that the arbitrators ruled on the issue of attorneys' fees. PSI removed the state court confirmation action to the United States District Court for the Southern District of Florida, invoking diversity of citizenship jurisdiction under 28 U.S.C. § 1332. PSI also filed a cross-motion to vacate the award, arguing that the arbitrators exceeded their powers by awarding punitive damages because the account agreement called for the application of New York law, which precludes arbitrators from awarding punitive damages.

The district court issued two orders. First, the court granted Davis's motion to confirm the award, relying on *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378 (11th Cir.1988). In its second order, the court denied Davis's motions for modification or correction of the award and for attorneys' fees, stating that "the arbitration panel . . . was aware of Fla.Stat. § 517, which allows for attorneys' fees." This appeal followed.

## II. ISSUES

In this appeal, we are called upon to decide: (1) whether the district court erred in confirming the arbitration panel's award of punitive damages where the parties agreed that their contract would be governed by New York law, which does not allow arbitral awards of punitive damages; (2) whether the confirmation of the punitive damages award violates the Due Process Clause of the Fifth and Fourteenth Amendments; and (3) whether the district court erred in denying Davis's motion to vacate, modify, or correct the arbitration award with respect to attorneys' fees.

## III. STANDARD OF REVIEW

The Supreme Court recently held that "courts of appeals should apply ordinary, not special, standards when reviewing district court decisions upholding arbitration awards." *First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995). Thus, the Court adopted the view of the majority of circuit courts, which hold that review of a district court's confirmation of an arbitration award "should proceed like review of any other district court decision finding an agreement between parties, i.e., accepting findings of fact that are not 'clearly erroneous' but deciding questions of law de novo." *Id.* In so holding, the Court expressly rejected the "abuse of discretion" standard previously applied by this court to district court decisions that confirm arbitration awards. *Id.* (rejecting *Robbins v. Day,* 954 F.2d 679, 681–82 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992)). We therefore review the district court's factual findings for clear error and examine its legal conclusions *de novo.*

## IV. ANALYSIS

### A. *Arbitrators' Power to Award Punitive Damages*

PSI first argues that the district court erred in granting Davis's motion to confirm and in denying PSI's cross-motion to vacate the arbitration award to the extent that it upheld the award of punitive damages. Rule 43 of the AAA Security Arbitration Rules, under which Davis and PSI agreed to arbitrate, provides to the arbitrator the authority to "grant any remedy or relief that the arbitrator deems just and equitable, and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." American Arbitration Association, Securities Arbitration Rules (1989). New York law, however, which the parties agreed would govern their contract, prohibits arbitrators from awarding punitive damages. *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 833–35, 353 N.E.2d 793, 795–97 (1976). Accordingly, PSI asserts that the arbitrators exceeded their powers by awarding punitive damages.

The district court confirmed the award based on this court's decision in *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378

(11th Cir.1988). In *Bonar,* this court held that the arbitrators were not limited by New York law in deciding whether to award punitive damages. The court reasoned that "a choice of law provision in a contract governed by the Arbitration Act merely designates the substantive law that the arbitrators must apply in determining whether the conduct of the parties warrants an award of punitive damages; it does not deprive the arbitrators of their authority to award punitive damages." *Id.* at 1387 (citation omitted). PSI contends that this court should disregard *Bonar* in light of the United States Supreme Court's later decision in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In *Volt,* the Court held that where private parties have agreed to apply the laws of a particular state, applicable state rules govern the conduct of the arbitration even if those rules restrict the arbitration in a manner inconsistent with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* 489 U.S. at 479, 109 S.Ct. at 1255–56.

■ PSI's argument, however, has been foreclosed by the Supreme Court's recent decision in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* — U.S. —, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).[1] In *Mastrobuo-*

*no,* the Court held that a contract between a securities brokerage firm and customers permitted an arbitral award of punitive damages, despite a provision in the parties' agreement that New York law would govern the contract. *Id.* — U.S. at — – —, 115 S.Ct. at 1215–19. The Court stated that "if contracting parties agree to *include* claims for punitive damages within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration." *Id.* — U.S. at —, 115 S.Ct. at 1216 (emphasis in original). Noting that the rules of the National Association of Securities Dealers ("NASD"), under which the parties agreed to arbitrate, provided that arbitrators may award "damages and other relief," the Court concluded that the arbitral award of punitive damages should have been enforced as within the scope of the contract. *Id.* — U.S. at — – —, 115 S.Ct. at 1218–19.

As counsel for both parties conceded at oral argument, *Mastrobuono* is directly on point.[2] In fact, the arbitration clause in the instant case is virtually identical to the clause at issue in *Mastrobuono.*[3] Accordingly, we hold that the district court properly confirmed the arbitration panel's award of punitive damages to Davis.

1. Counsel for both parties conceded at oral argument that the Supreme Court's decision in *Mastrobuono* would be dispositive of the issue of the arbitrators' authority to award punitive damages in this case. As a result, we stayed our decision in the present case pending the outcome of *Mastrobuono.*

2. Although PSI cited the Seventh Circuit's holding in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 20 F.3d 713 (7th Cir.1994), as strong support for its position, counsel for PSI now argues, after the Supreme Court's reversal of the Seventh Circuit, that *Mastrobuono* is "not controlling" because the arbitration in that case was before the NASD rather than the AAA. That argument is meritless. The variance in arbitral fora between the two cases is a distinction without a difference. The AAA Rules, like those of the NASD, provide the arbitrators with broad remedial powers. *See* AAA Rule 43, *supra.* Furthermore, we note that *Bonar,* 835 F.2d at 1386, upon which the district court relied and which the Supreme Court reaffirmed in *Mastrobuono,*

involved an arbitration before the AAA. Moreover, we are disturbed that counsel for PSI's five-page letter of supplemental authority attempting to distinguish the Supreme Court's decision in *Mastrobuono* clearly contravenes Federal Rule of Appellate Procedure 28(j), which provides that a letter citing supplemental authority "shall *without argument* state the reasons for the supplemental citations" and that "any response ... shall be similarly limited." Fed.R.App.P. 28(j) (emphasis added).

3. The Client Agreement at issue in *Mastrobuono* provided in pertinent part:

 Unless unenforceable due to federal or state law, any controversy arising out of or relating to [my] accounts ... shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange Inc. as I may elect.

 *Mastrobuono,* — U.S. at — n. 2, 115 S.Ct. at 1217 n. 2.

B. *Punitive Damages Award and Due Process*

PSI next contends that the district court's confirmation of the punitive damages award violates the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution because arbitration lacks the procedural protections and meaningful judicial review required for the imposition of punitive damages. In support of its position, PSI cites *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), where the Supreme Court emphasized various safeguards provided by Alabama's system for imposing punitive damages, including jury instructions to guide the jury's discretion, meaningful and adequate review by the trial court, and appellate review of punitive awards. *Id.* at 19–21, 111 S.Ct. at 1044–45. The Court concluded that Alabama's punitive damage procedures did not violate due process principles and upheld a jury award of punitive damages that was four times the amount of the compensatory damages awarded in the case. *Id.* at 23–24, 111 S.Ct. at 1046.

PSI also cites the Supreme Court's recent decision in *Honda Motor Co., Ltd. v. Oberg*, ─── U.S. ───, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994), where the Court confirmed that due process mandates some degree of judicial review of punitive damage awards imposed by state courts. The Court held that an amendment to the Oregon Constitution limiting judicial review of the size of punitive damage awards violated the Due Process Clause. *Id.* ─── U.S. at ───, 114 S.Ct. at 2341. The Court reasoned that judicial review of punitive damage awards is one of the few procedural safeguards against the danger of arbitrary deprivation of property in the form of excessive damage awards. *Id.* ─── U.S. at ─── ─ ───, 114 S.Ct. at 2340–41. PSI argues that because arbitration proceedings lack the procedural protections enumerated in *Haslip* and the judicial review required in *Honda Motor Co.*, an arbitral

award of punitive damages violates due process.

■ It is well settled that judicial review of an arbitration award is narrowly limited. *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 778 (11th Cir.1993); *Robbins*, 954 F.2d at 683 ("The [FAA] does not allow courts to 'roam unbridled' in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specified ways."). The FAA presumes that arbitration awards will be confirmed and enumerates only four narrow bases for vacatur. *See* 9 U.S.C. §§ 9 and 10.[4] In addition, procedures are streamlined in arbitration proceedings. As one circuit judge has noted:

> In the arbitration setting we have almost none of the protections that fundamental fairness and due process require for the imposition of this sort of punishment. Discovery is abbreviated if available at all. The rules of evidence are employed, if at all, in a very relaxed manner. The factfinders (here the panel) operate with almost none of the controls and safeguards assumed in *Haslip*.

*Lee v. Chica*, 983 F.2d 883, 889 (8th Cir.) (Beam, J., concurring in part and dissenting in part), *cert. denied*, ─── U.S. ───, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993). PSI asserts that due process requires more stringent procedures and judicial review for excessiveness before an arbitral award of punitive damages can be confirmed. We disagree.

■ First, it is axiomatic that constitutional due process protections "do not extend to 'private conduct abridging individual rights.'" *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1988) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961)). Thus, only state action is subject to scrutiny under the Due Process

---

**4.** The FAA allows a court to vacate an arbitration award: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hear-

ing, or in refusing to hear material and pertinent evidence, or of any other misbehavior by which the rights of any party may have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutu-

Clause.[5] *Id.* The Supreme Court has described a specific inquiry to determine if the state action requisite to a due process claim has been met:

> In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. This may occur if the State creates the legal framework governing the conduct ...; if it delegates its authority to the private actor ...; or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior.... Thus, in the usual case we ask whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor.

*Tarkanian,* 488 U.S. at 192, 109 S.Ct. at 462 (citations omitted); *see also Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) ("[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.").

■ Applying this analysis, we agree with the numerous courts that have held that the state action element of a due process claim is absent in private arbitration cases. *See, e.g., Federal Deposit Ins. Corp. v. Air Florida Sys., Inc.,* 822 F.2d 833, 842 n. 9 (9th Cir. 1987) ("The arbitration involved here was private, not state, action; it was conducted pursuant to contract by a private arbitrator. Although Congress, in the exercise of its commerce power, has provided for some governmental regulation of private arbitration agreements, we do not find in private arbitration proceedings the state action requisite for a constitutional due process claim."), *cert. denied,* 485 U.S. 987, 108 S.Ct. 1289, 99 L.Ed.2d 500 (1988); *Elmore v. Chicago & Illinois Midland Ry. Co.,* 782 F.2d 94, 96 (7th Cir.1986) ("[T]he fact that a private arbitrator denies the procedural safeguards that are encompassed by the term 'due process of

law' cannot give rise to a constitutional complaint."); *International Ass'n of Heat and Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Environmental Services, Inc.,* 814 F.Supp. 392, 402–03 (D.Del.1993) (no state action in arbitration proceedings pursuant to a collective bargaining agreement between private parties); *Austern v. Chicago Bd. Options Exch., Inc.,* 716 F.Supp. 121, 125 (S.D.N.Y.1989) (holding that the conduct of an arbitration panel "did not in any way constitute state action"), *aff'd,* 898 F.2d 882 (2d Cir.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990). In the present case, the arbitration was a private proceeding arranged by a voluntary contractual agreement of the parties. Accordingly, the arbitration proceeding itself did not constitute state action.

PSI further argues that the district court's *confirmation* of the punitive damage award violated due process, apparently relying on the *Shelley v. Kraemer* theory that a court's enforcement of a private contract constitutes state action. *See Shelley v. Kraemer,* 334 U.S. 1, 19–20, 68 S.Ct. 836, 845, 92 L.Ed. 1161 (1948) (holding that a court order enforcing a racially restrictive covenant constitutes state action). The holding of *Shelley,* however, has not been extended beyond the context of race discrimination. *See* Edward Brunet, *Arbitration and Constitutional Rights,* 71 N.C.L.Rev. 81, 111 (1992) ("Characterizing a *Shelley*-type court enforcement as state action could be criticized because the case has been interpreted as limited to its facts."); Laurence H. Tribe, *American Constitutional Law* 1711–12 (2d ed. 1988) ("[C]ourts and commentators have characteristically viewed *Shelley* with suspicion."). Instead, the concept of state action has since been narrowed by the Supreme Court. *See, e.g., Tarkanian,* 488 U.S. at 199, 109 S.Ct. at 465–66 (holding that the NCAA is not a state actor); *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522, 542–47, 107 S.Ct. 2971, 2984–87, 97 L.Ed.2d 427 (1987) (holding that U.S. Olympic Committee is not a governmental actor

---

al, final, and definite award was not made. 9 U.S.C. § 10(a).

**5.** As in most cases and articles discussing the doctrine, the term "state action" is used generically here to mean government action.

despite federal charter, regulation, and funding); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164–65, 98 S.Ct. 1729, 1737–38, 56 L.Ed.2d 185 (1978) (rejecting argument that private post-eviction sale of furniture permitted under New York Uniform Commercial Code constituted state action). In light of this narrow interpretation of state action, courts considering the issue have rejected the argument that the limited state action inherent in the confirmation of private arbitration awards mandates compliance with the Due Process Clause. *See, e.g., United States v. American Soc'y of Composers, Authors and Publishers,* 708 F.Supp. 95, 96–97 (S.D.N.Y.1989) (holding mere court approval of arbitration is not state action; under that theory "all arbitrators could be subject to due process limitations through the simple act of appealing the arbitrators' decisions to the court system"); *cf. Rifkind & Sterling, Inc. v. Rifkind,* 28 Cal.App.4th 1282, 33 Cal. Rptr.2d 828, 834 (1994) (holding that state court confirmation of an arbitration award constitutes only a "limited degree of state action" that does not require *Haslip–Honda Motor Co.* judicial review). We likewise decline to extend *Shelley* and hold that the mere confirmation of a private arbitration award by a district court is insufficient state action to trigger the application of the Due Process Clause.

Even if we assume *arguendo* that the district court's confirmation of the arbitration award does constitute state action triggering due process protections, the *Honda Motor Co.* case is distinguishable because it involved an award of punitive damages by a jury, not a panel of arbitrators. In *Honda Motor Co.,* the Supreme Court held that a decision to award exemplary damages "should not be committed to the unreviewable discretion *of a jury.*" — U.S. at —, 114 S.Ct. at 2342 (emphasis added). In reaching this conclusion, the Court emphasized the potential that jurors may "use their verdicts to express biases against big business, particularly those without strong local presences." *Id.* — U.S. at — — —, 114 S.Ct. at 2341–42. By contrast, in the arbitration context, the danger of bias against large corporations or those without a presence in the local community is absent. *See J. Alexander Securities,*

*Inc. v. Mendez,* 17 Cal.App.4th 1083, 21 Cal. Rptr.2d 826, 833 (1993) (recognizing that a panel of arbitrators is "much less likely than a jury to be swayed by passion and prejudice"), *cert. denied,* — U.S. —, 114 S.Ct. 2182, 128 L.Ed.2d 901 (1994). Thus, while *Haslip* and *Honda Motor Co.* confirm the necessity for judicial review of punitive damage awards by a jury, PSI has not cited, nor have we found, a single case holding that an award of punitive damages by an arbitrator is in any way unconstitutional. It is plausible to conclude that the due process safeguards required for the imposition of punitive damages by a jury are not required where the parties have chosen to submit their dispute to a panel of arbitrators and have empowered those arbitrators to consider the issue of punitive damages.

Furthermore, Congress has made clear its intent to favor arbitration by deferring to the expertise of arbitrators. The FAA establishes a "federal policy favoring arbitration ... requiring that [courts] rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (citations and internal quotations omitted). *See also Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056, 1063 (9th Cir.1991) (noting "the expansive view that has been taken of the power of arbitrators to decide disputes"); *Bonar,* 835 F.2d at 1387 (noting federal policy that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration). The expertise of arbitrators and the lack of bias in the arbitral forum have caused some commentators to predict that "runaway punitive damage verdicts are a problem that is likely to be reduced, rather than aggravated, by shifting disputes from courts to arbitration." Stephen J. Ware, *Punitive Damages in Arbitration: Contracting Out of Government's Role in Punishment and Federal Preemption of State Law,* 63 Fordham L.Rev. 529, 570 (1994). As one district court has recognized:

an arbitrator steeped in the practice of a given trade is often better equipped than a judge not only to decide what behavior so transgresses the limits of acceptable com-

mercial practice in that trade as to warrant a punitive award, but also to determine the amount of punitive damages needed to (1) adequately deter others in the trade from engaging in similar misconduct, and (2) punish the particular defendant in accordance with the magnitude of his misdeed.

*Willoughby Roofing & Supply Co., Inc. v. Kajima Int'l, Inc.,* 598 F.Supp. 353, 363 (N.D.Ala.1984), *aff'd,* 776 F.2d 269 (11th Cir. 1985). In summary, we conclude that the federal policy favoring arbitration, as well as the absence of the bias and runaway punitive awards prevalent in the jury context, distinguish the arbitral award in the present case from the jury award of punitive damages in *Honda Motor Co.*

In addition, we note that the Supreme Court has upheld the arbitrability of federal RICO claims, including the imposition of treble damages. *McMahon,* 482 U.S. at 240–42, 107 S.Ct. at 2345–46. Some commentators assert that this holding implicitly recognizes the propriety of punitive damages in arbitration. *See, e.g.,* David E. Robbins, *Securities Arbitration* 125 (1988) ("It would be hard to imagine that if the Supreme Court empowers an arbitration panel to award treble damages in RICO cases it would preclude punitive damages in appropriate cases."). We also note that while the Supreme Court did not discuss the due process issue in *Mastrobuono,* the Court upheld an arbitration award of punitive damages in an amount greater than the award at issue in the present case. *Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1215 (reversing district court order vacating arbitral punitive damage award of $400,000.00).

Finally, we find it significant that PSI was a voluntary participant in the arbitration procedure. As the Supreme Court has stated,

"[a]rbitration under the [Federal Arbitration] Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt,* 489 U.S. at 479, 109 S.Ct. at 1255. Thus, an agreement to arbitrate is equivalent to voluntarily entering into a contract, the terms of which the parties are free to specify.[6] *Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 709 (7th Cir.1994) ("Indeed, short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes; parties are as free to specify idiosyncratic terms of arbitration as they are to specify any other terms in their contract."). In *Todd Shipyards,* 943 F.2d at 1063–64, the Ninth Circuit focused on the voluntary nature of arbitration and rejected a due process challenge to an arbitral award of punitive damages. The court, noting that the defendant had the opportunity to present evidence and argue the merits of its position, concluded that a defendant "cannot agree to arbitrate 'all disputes' and then assert that an award made pursuant to that agreement ... denies due process because it is not sufficiently reliable." *Id.* Likewise, in this case, we agree that PSI may not require customers to arbitrate under the terms of an account agreement that PSI drafted and later complain about the adequacy of the procedures afforded by the forum of its own choosing.[7]

In sum, we are persuaded that PSI's due process challenge to the arbitration panel's award of punitive damages must fail. To decide otherwise would constitutionalize private arbitration proceedings and diminish

---

6. Presumably, therefore, even after the Supreme Court's decision in *Mastrobuono,* parties wishing to avoid the imposition of punitive damages in arbitration may simply expressly exclude punitive damages in the arbitration agreement. *See Bonar,* 835 F.2d at 1387 n. 16 ("Of course, the Arbitration Act would not override a clear provision in a contract prohibiting arbitrators from awarding punitive damages."). *But see Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1219 (finding it unlikely that investors "had any idea that by signing a standard-form agreement to arbi-

trate disputes they may be giving up an important substantive right").

7. Of course, it is no secret that the securities industry has consistently favored the expeditious forum of arbitration as the preferred method for resolving disputes. *See Rostad & Rostad Corp. v. Investment Management & Research, Inc.,* 923 F.2d 694, 697 (9th Cir.1991) ("Having enthusiastically welcomed the enforcement of agreements to arbitrate, the securities industry might be expected not to encourage retrial of a case in a federal court.").

both the effectiveness and the appeal of the arbitral forum as an alternative means for resolving disputes. *See Rifkind & Sterling,* 33 Cal.Rptr.2d at 834 (warning that if the same due process incidents imposed on jury awards were required in arbitration, "the contrasting simplicity, informality, and private nature of arbitration would be seriously undermined"). We therefore affirm the district court's confirmation of the punitive damage award.

## C. *The Cross–Appeal: Attorneys' Fees*

 In his cross-appeal, Davis contends that the district court erred in refusing to modify, vacate or correct the arbitrators' award to the extent that it denied Davis his attorneys' fees. In addition, Davis submits that the district court erred in failing to hear the attorneys' fees issue on the merits, or to remand it to the arbitrators for determination. Davis argues that he never submitted a claim for attorneys' fees to the arbitration panel; thus, the panel exceeded its powers by deciding a claim that was not before it.[8] PSI responds: (1) that Davis did in fact submit a claim for attorneys' fees to the panel; (2) that the panel and the district court made "findings of fact" that the issue was submitted; and (3) that an award of attorneys' fees to Davis would be "unjust" because PSI, not Davis, should be considered the prevailing party.

The arbitration panel calculated Davis's compensatory award pursuant to Fla.Stat. Ann. § 517.011 et seq. (West 1988), which also provides that "the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust." Fla.Stat.Ann. § 517.211(6) (West 1988). This court has interpreted this provision as *compelling* an award of attorneys' fees unless such an award would be unjust. *Golub v. J.W. Gant & Assoc.,* 863 F.2d 1516, 1521 (11th Cir.1989). Nevertheless, the arbitration panel ruled that each party was to bear its own attorneys' fees.

The FAA provides that a court may vacate an award by an arbitration panel "[w]here the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). In addition, the FAA allows a court to modify or correct the award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11(b). Thus, "the law is well-established that an arbitrator 'can bind the parties only on issues that they have agreed to submit to him.'" *Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers Int'l Union, AFL–CIO, Local No. 361,* 726 F.2d 698, 700 (11th Cir.1984) (quoting *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 583 (5th Cir.1980)).[9]

 Davis asserts that he never submitted the issue of entitlement to or amount of attorneys' fees to the arbitrators.[10] PSI ar-

---

**8.** The parties disagree as to what body of law applies in determining the scope of the arbitrators' authority—federal law or New York law. PSI argues that, after *Volt,* New York law controls the issue and gives the arbitrators authority to award attorneys' fees. While we think *Mastrobuono* dispenses of PSI's argument, even if New York law applies, New York law only empowers arbitrators to award attorneys' fees if the parties expressly agree that attorneys' fees are recoverable in the arbitration agreement. *CBA Industries, Inc. v. Circulation Mgmt., Inc.,* 179 A.D.2d 615, 616, 578 N.Y.S.2d 234, 235 (N.Y.App.Div. 1992). Accordingly, under either body of law, arbitrators lack the power to award attorneys' fees unless the parties agree to submit the issue for determination.

**9.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

**10.** Davis explains that he did not seek an award of attorneys' fees in his claim because, at the time of the arbitration, Florida law provided that awards of attorneys' fees could be made only by trial courts in post-award confirmation proceedings. Fla.Stat.Ann. § 682.11 (West 1990); *Loxahatchee River Environmental Control District v. Guy Villa & Sons, Inc.,* 371 So.2d 111, 113 (Fla.Dist.Ct.App.1978), *cert. denied,* 378 So.2d 346 (Fla.1979). After the arbitration in this case, Florida's Fourth District Court of Appeals overruled *Loxahatchee* and held that arbitrators could award attorneys' fees where the parties expressly agreed to submit the issue to the arbitrators. *Pierce v. J.W. Charles–Bush Securities, Inc.,* 603 So.2d 625, 630–31 (Fla.Dist.Ct.App.1992) (en banc).

gues that Davis did submit a claim for attorneys' fees based on three actions: (1) his Statement of Claim requested "costs"; (2) he gave the panel a copy of Fla.Stat.Ann. § 517, failing to redact a subsection providing for attorneys' fees; and (3) he gave the panel a copy of *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056 (9th Cir.1991), which addressed the punitive damages issue discussed above, but also held that arbitrators have the authority to award attorneys' fees.

We do not believe that these actions amount to a submission of the issue of attorneys' fees for determination. The Statement of Claim makes no request for attorneys' fees, and neither party presented evidence or argument on the issue. Moreover, the statute and case law provided by Davis to the arbitrators were primarily relevant to the calculation of compensatory and punitive damages. The mere fact that the arbitration panel was aware of a statute that provides for an award of attorneys' fees does not constitute a submission of the issue by the parties for determination. Accordingly, the attorneys' fees issue was not submitted to the arbitrators, and the arbitrators therefore exceeded their powers in deciding the issue. 9 U.S.C. § 10(a)(4).[11]

PSI argues, however, that the refusal to award attorneys' fees is consistent with Section 517's provision that an award be made to the prevailing party unless such an award would be "unjust." Because Davis asserted multiple claims against PSI and its employees and only received judgment in its favor on some, PSI contends that it "may be fairly characterized as the prevailing party" and, therefore, that an award of attorneys' fees to Davis would be unjust. In support of this bold assertion, PSI cites *Folta v. Bolton*, 493 So.2d 440, 442 (Fla.1986) (per curiam), where the Florida Supreme Court held that in a multicount medical malpractice action

where each claim is separate and distinct, as opposed to being an alternative theory of liability for the same wrong, the prevailing party on each claim is entitled to an award of attorneys' fees generated in connection with that claim.

PSI's argument is clearly without merit. According to the Supreme Court, a prevailing party for purposes of attorneys' fees is one that "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation omitted). The prevailing party inquiry does not turn on the magnitude of the relief obtained. *Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992). Rather, the degree of success obtained by the plaintiff goes to the reasonableness of the amount of the award. *Id.* —— U.S. at ——, 113 S.Ct. at 574. This case does not involve separate and distinct claims arising from different acts resulting in different injuries, as in *Folta*. Instead, Davis's claim involves alternative theories of liability for the same wrong: the mismanagement of an investment account. Davis recovered $783,684.00 on six claims against PSI, and he is clearly the prevailing party. PSI cannot be said to be the prevailing party just because the judgment rendered against it could have been worse.

In summary, we conclude that the district court erred in confirming the arbitrators' decision on attorneys' fees, when that issue was not submitted to the arbitrators for determination. Accordingly, we vacate the district court's judgment insofar as it confirmed the arbitrators' determination of attorneys' fees and remand the matter to the district court for consideration of the issue of entitlement and amount of attorneys' fees under Section 517.011 et seq.[12]

---

11. We likewise reject PSI's disingenuous argument that both the arbitration panel and the district court made a "finding of fact" that Davis actually submitted the attorneys' fees issue to the panel. Both the panel and the district court merely ruled on the issue; neither made a "finding of fact" that the issue had been submitted.

12. We also vacate the district court's order denying Davis's motion for attorneys' fees and remand to the district court to consider whether, in light of our holding that the district court erred in confirming the arbitrators' decision on attorneys' fees, an award to Davis of the attorneys' fees he incurred in the confirmation proceedings is also warranted.

## V. CONCLUSION

For the foregoing reasons, we hold that the district court properly confirmed the arbitrators' award of punitive damages against PSI. Neither the punitive damages award itself nor the confirmation of the award by the district court constitute sufficient state action to trigger the application of due process mandates. Moreover, even if the confirmation of the award does constitute state action, we are not persuaded that such action violates PSI's due process rights. Because the issue of attorneys' fees was not actually submitted to the arbitration panel for determination, we also hold that the arbitrators' decision on attorneys' fees exceeded the scope of their powers and that the district court erred in confirming that portion of the award.

Accordingly, we affirm the punitive damages portion of the arbitration award, vacate the confirmation of the award insofar as it decides the issue of attorneys' fees and remand the case to the district court for consideration of the issue of attorneys' fees on the merits.

AFFIRMED in part, VACATED in part and REMANDED.