878 So.2d 388 (2004)
RICHMOND HEALTHCARE, INC., a foreign corporation, d/b/a Sunrise Health and Rehabilitation Center, Appellant,
v.
Philip A. DIGATI, Personal Representative, Estate of Samuel N. Sloane, Appellee.
No. 4D03-1276.
District Court of Appeal of Florida, Fourth District.
June 2, 2004.
Rehearing Denied August 19, 2004.
Alex Finch, Winter Park, for appellant.
*389 Laura B. Zebersky and Jason Corsover of Zebersky and Associates, P.A., Plantation, for appellee.
FARMER, C.J.
A nursing home (Sunrise) appeals an order refusing to enforce an agreement to arbitrate plaintiff's action for damages alleging negligent care and violations of chapter 400, part II, Florida Statutes. We reverse.
The nursing home admission contract contained the following provision:
"any action, dispute, claim, or controversy of any kind ... now existing or hereinafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of health care services, any agreement between the parties, the provision of any other goods or services by the Health Care Center or other transactions, contracts or agreements of any kind whatsoever, any past, present or future incidents, omissions, acts, errors, practices, or occurrence causing injury to either party whereby the other party or its agents, employees or representative may be liable in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the `NHLA')."
The contract also contained a clause saying that it is to be "interpreted in accordance with the law of the state where the Health Care Center is located." In response to Sunrise's motion to compel arbitration, plaintiff argued that the provision should not be enforced. In particular, he argued that under the contract the arbitration was conducted by NHLA, whose discovery and evidence rules conflict the civil remedies of chapter 400, part II, Florida Statutes. See § 400.23, Fla. Stat. (2003).[1]
The trial court held two hearings at which argument was made but no evidence adduced. In its order denying arbitration, the trial court held that the contract was "not illusory" and that section 400.023 does not preclude arbitration of chapter 400 claims by "an otherwise valid agreement for arbitration." The court noted that the Sunrise had not waived the right to assert the arbitration issue. The court took the matter under further advisement and ordered the parties to file memoranda as to whether a part of the arbitration provision could be severed. The court also required Sunrise to file a copy of the applicable arbitration rules of NHLA.
After full briefing by the parties, the trial court entered an order denying the motion to compel arbitration. The trial judge explained:
"By adopting the [NHLA] Rules of Procedure, the Admission Contract binding arbitration clause substantially infringes upon the statutory rights of the resident. First, the resident may only recover damages, actual or punitive, upon a showing of intentional or reckless conduct by clear and convincing evidence. This severely limits the remedies afforded by Fla. Stat. § 400.23, and mandates a higher burden of proof.
"In addition, the [NHLA] Rules provide that, unless the arbitrator finds good cause to award arbitration fees, expenses and compensation to the prevailing party, the expenses shall be equally divided among the parties. This limits the resident's right to recover prevailing *390 plaintiff attorneys fees and costs pursuant to Fla. Stat. § 400.23."
Noting that the specific issue appears to be one of first impression, the trial judge drew an analogy with arbitration provisions in the context of employment discrimination and truth-in-lending cases, citing several federal decisions. In the end, the court concluded that the provision requiring the parties to resolve their claims "by binding arbitration administered by the National Health Lawyers Association" was unenforceable as a matter of law. The trial judge further held that no portion of the arbitration clause was severable because he "would have to `blue pencil' or rewrite the NHLA Rules to preserve them." It is from that order that Sunrise appeals.
We begin by noting that the issue we are asked to decide today does not involve a claim that the arbitration agreement is unenforceable because of unconscionability. See Romano v. Manor Care Inc., 861 So.2d 59 (Fla. 4th DCA 2003) (finding both procedural and substantive unconscionability in nearly identical arbitration provision in nursing home contract). Instead the issue here is whether a court has the power  either generally or specifically under statute  to decline to enforce an arbitration agreement simply because it waives the judicial remedy of access to a court to resolve claims arising under statutory rights.
Generally speaking, there is no common law basis to refuse to enforce valid agreements to arbitrate by competent parties merely because they involve a waiver of statutory rights and remedies. See Pierce v. J.W. Charles-Bush Sec. Inc., 603 So.2d 625 (Fla. 4th DCA), decision approved in Turnberry Assoc. v. Service Station Aid, Inc., 651 So.2d 1173 (Fla.1995). As we said in Pierce:
"If civil rights, antitrust and securities fraud claims are not inappropriate for arbitration, it is very difficult to imagine a civil claim in which an agreement to arbitrate would not be enforced."
603 So.2d at 628.
As we noted in Pierce, at one time courts might have seemed hostile to arbitration  it was seen as an attempt to oust courts of lawful jurisdiction  and the enforcement of such agreements became encrusted with judicial restrictions and procedural impediments. Any such hostility disappeared after a series of United States Supreme Court and Florida Supreme Court decisions emphasizing that arbitration agreements are now favored and will be enforced whenever possible. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (any doubts concerning scope of arbitrable issues should be resolved in favor of arbitration); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ("In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (arbitration not inappropriate for antitrust and RICO claims); Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (arbitration not inappropriate for securities fraud and rule 10b 5 claims), Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (no exemption for arbitration of age discrimination claim); see also Roe v. Amica Mut. Ins. Co., 533 So.2d 279 (Fla.1988) (arbitration is favored means of dispute resolution and courts indulge every reasonable presumption to uphold proceedings resulting in award); Miele v. Prudential-Bache Sec., 656 So.2d 470 (Fla.1995) (arbitration *391 favored; statutory limitations and conditions for punitive damages award not applicable in arbitration in absence of plain legislative requirement); Turnberry Assoc. v. Service Station Aid, Inc., 651 So.2d 1173 (Fla.1995) (arbitration agreements favored and parties may waive right to have judge determine entitlement and amount of attorneys fees). Thus the present day rule in Florida is  as the last cited cases indicate  that limitations and conditions on the enforcement of arbitration agreements are appropriate only where the legislature has by statute plainly imposed them.
We are unable to find anything in the nursing home statutes imposing any such limitations or conditions on the enforcement of arbitration agreements in nursing home admission agreements. Nor has either of the parties called our attention to a statute indisputably doing so. We do know from other statutes that when the legislature wants to require specific contractual provisions waiving civil remedies, they know how to do so. See, e.g., § 672.316(2), Fla. Stat. (2003) ("[T]o exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous.").
There is a statutory provision regulating contracts between nursing homes and their patients, which we set out in full in the margin.[2] Clearly nothing in this statute purports to regulate how arbitration provisions shall be done in admission contracts. We are therefore unable to find any statutory authority allowing judges to refuse to enforce valid arbitration provisions in nursing home admission contracts of competent parties,[3] for reasons other than unconscionability.
In reversing the order denying arbitration, we have not expressed any opinion on *392 the pending unconscionability claim. That should be analyzed, after receiving evidence, in accord with our Romano decision. We return the case to the trial court for further proceedings on that and all other remaining issues.
REVERSED.
TAYLOR, JJ., concurs.
GROSS, J., concurs in part and dissents in part with opinion.
GROSS, J., concurs in part and dissents in part.
I believe that the arbitration agreement in this case is substantively unconscionable because it does not provide an adequate mechanism for pursuing statutory rights and defeats the remedial purpose of the statute. See Romano v. Manor Care, Inc., 861 So.2d 59, 62-63 (Fla. 4th DCA 2003); Brasington v. EMC Corp., 855 So.2d 1212 (Fla. 1st DCA 2003). Therefore, I would remand for an evidentiary hearing directed at the issue of the procedural unconscionability of the arbitration clause.
NOTES
[1] Plaintiff also argued that enforcement of the arbitration provision should be denied because it was unconscionable, but the court reserved that issue for a later determination after an evidentiary hearing.
[2] See § 400.151, Fla. Stat. (2003), which states:

"(1) The presence of each resident in a facility shall be covered by a contract, executed by the licensee and the resident or his or her designee or legal representative at the time of admission or prior thereto and at the expiration of the term of a previous contract, and modified by the licensee and the resident or his or her designee or legal representative at the time the source of payment for the resident's care changes. Each party to the contract is entitled to a duplicate original thereof, printed in boldfaced type, and the licensee shall keep on file all contracts which it has with residents. The licensee may not destroy or otherwise dispose of any such contract until 5 years after its expiration or such longer period as may be provided in the rules of the agency. Microfilmed records or records reproduced by a similar process of duplication may be kept in lieu of the original records.
(2) Each contract to which this section applies shall contain express provisions specifically setting forth the services and accommodations to be provided by the licensee, the rates or charges therefor, bed reservation and refund policies, and any other matters which the parties deem appropriate. The licensee shall attach to the contract a list of services and supplies available but not covered by the per diem rate of the facility or by Titles XVIII and XIX of the Social Security Act and the standard charge to the resident for each item. The licensee shall provide written notification to each party to the contract of any changes in any attachment thereto, no fewer than 14 days in advance of the effective date of those changes. The agency shall specify by rule an alternative method for notification of changes in the cost of supplies. If the resident is a party to the contract, the licensee shall provide him or her with a written and oral notification of the changes."
[3] We do not decide whether the contract in this case was made by competent parties, or that any person involved in the making of the contract was authorized to do so, as that issue has not yet been litigated or decided by the trial court.