**ROSTAD AND ROSTAD CORPORATION, Plaintiff–Appellee,**

v.

**INVESTMENT MANAGEMENT & RESEARCH, INC., et al., Defendants–Appellants.**

**ROSTAD AND ROSTAD CORPORATION, Plaintiff–Appellant,**

v.

**INVESTMENT MANAGEMENT & RESEARCH, INC., et al., Defendants–Appellees.**

Nos. 89–35014, 89–35064.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1990.

Decided Jan. 14, 1991.

John R. Kiefner, Jr., and Clifford J. Hunt, Ridden and Earle, St. Petersburg, Fla., for defendant-appellant-cross-appellee Investment Management & Research.

Stephen D. Bell, and Robert L. Sterup, Dorsey & Whitney, Billings, Mont., for plaintiff-appellee-cross-appellant.

Before GOODWIN, Chief Judge, WRIGHT and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Rostad and Rostad Corporation (R & R), a Montana Subchapter S corporation, brought suit against Investment Management and Research, Inc. (IM & R), a Florida Corporation, alleging broker fraud, negligence, breach of contract, breach of an implied covenant of good faith and fair dealing, and breach of fiduciary duty in violation of both state and federal securities laws. Pursuant to an arbitration agreement that IM & R had asked R & R to execute, an arbitration proceeding began before arbitrators proposed by the American Arbitration Association. Federal court proceedings were stayed pending the outcome. After two days of hearings the arbitration panel found that IM & R had com-

mitted common law fraud and had violated the Montana Securities Act and Section 10(b) of the Federal Securities Exchange Act of 1934 and Section 12(2) of the Federal Securities Act of 1933 promulgated under section 10(b) of the federal act. The arbitrators awarded R & R $336,330.15, including $204,899.76 in punitive damages. R & R moved to confirm the award in the federal district court, while IM & R moved to vacate it. The district court denied the motion to vacate and confirmed the award.

IM & R appeals. We affirm and grant R & R's cross appeal for attorneys' fees and costs.

## FACTS

R & R is a corporation whose only asset is a family farm on a ranch near White Sulphur Springs, Montana operated by Phillip Rostad, Sr., his wife Lee, their son Phillip Rostad, Jr., and their son's wife Joan. Phillip Rostad, Jr., the R & R person active in the transactions at issue, graduated from the University of Montana in 1976 with a Bachelor of Arts degree in Business Administration. He then worked for 17 months as a national bank examiner and subsequently held a part-time position as an auditor for the First National Bank in White Sulphur Springs. His regular work at the time of these investments was as a farmer.

On March 25, 1987, at the advice of a local banker, Phillip Rostad, Jr. telephoned John Ridgeway, an investment broker in IM & R's office in North Little Rock, Arkansas. Rostad told Ridgeway that R & R had funds available from the sale of grain and livestock and that he was seeking short term investments which would be safe, would be highly liquid, and would yield an interest rate slightly higher than a passbook savings account. He emphasized that liquidity was important because the funds invested would be needed to pay the expenses of spring planting.

Ridgeway advised Rostad to commit $10,000 to a margin account in United States treasury bonds and to invest $90,000 in a conservative and readily accessible account composed of United States treasury bills.

Contrary to Rostad's instructions, Ridgeway immediately bought a $100,000 treasury note for R & R and two days later on March 27, 1987 used the note as collateral to buy $1 million of United States treasury bonds on margin. Ridgeway had no authorization for such an investment and it was contrary to Rostad's express instructions and investment objectives.

By April 2nd, the value of the treasury bonds had fallen so that losses in the account were over $50,000. Ridgeway talked to Rostad on this date but did not mention the losses. On April 4, Rostad received confirmation slips from IM & R indicating the purchases. Rostad opened the mail containing these slips and glanced at them but did not take the time to read them closely or understand them. On April 6, Rostad called Ridgeway to withdraw money for the spring planting. Ridgeway told Rostad to wait "a couple of days." He gave the same advice to Rostad on April 8 and April 10, hinting at losses but not explaining their magnitude.

On April 13, Rostad was advised of a margin call by Ridgeway and told that $50,000 additional funds were required to avoid liquidation of the R & R account. R & R did transfer an additional $25,000, but the account was liquidated by IM & R on April 14. When the account closed, R & R had lost $91,153.27 of its original $100,000 investment.

Ridgeway was fired by IM & R in May 1987 and IM & R's North Little Rock office was closed. Rostad subsequently learned that Ridgeway had pled guilty to theft in 1970. Ridgeway has not been located in the course of these proceedings and only Rostad was in a position to testify as to Ridgeway's representations.

## ISSUES ON APPEAL

IM & R attacks the confirmation of the arbitration award on the grounds that the arbitrators showed manifest disregard of the law as to R & R's duty to mitigate damages, as to the principle of ratification of trading transactions, and as to the award of punitive damages. IM & R also

contends that the arbitrators exhibited evident partiality. On its cross appeal R & R contends that it is entitled to attorneys' fees and costs both in the district court and on this appeal.

## ANALYSIS

This appeal is a kind of man bites dog case in that a brokerage firm attacks an arbitration award. Having enthusiastically welcomed the enforcement of agreements to arbitrate, the securities industry might be expected not to encourage retrial of a case in a federal court. But when a broker loses an arbitration it is hard for the disappointed litigant to realize that the rules now permit only a restricted review of what arbitrators have decided. Deference to arbitrators is the rule. *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1209 (9th Cir.1989) (en banc), *cert. denied*, —— U.S. ——, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

In light of *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989) there is some doubt as to whether a federal court will overrule arbitrators even when they act in "manifest disregard for the law." We need not decide the issue here. We assume that such an exception to arbitrators' decisions still exists. *See Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1497 n. 3 (9th Cir.1990). The arbitrators in this case did not disregard the law, much less show manifest disregard of the law.

■ IM & R's appeal on the issues of mitigation and ratification is based on two factual arguments; first, that Phillip Rostad, Jr. is not to be believed when he said that he did not understand the confirmation slips; and second, that in his initial letter of complaint to IM & R Rostad indicated that he learned of the million dollar purchase on margin by April 3rd. In his testimony before the arbitrators Rostad disputed the accuracy of his letter and said that it was only on April 13 that he learned of the big purchase. The arbitrators had to decide whether his letter was a mistake and whether he was credible when he said that he did not understand the confirmation slips. Neither the district court nor this court are in a position to second guess the arbitrators' finding of credibility. *See United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987). It is certainly not beyond common experience that a busy person would not pay attention to confirmation slips or that a letter composed in stress would get its dates wrong. To believe Phillip Rostad, Jr.'s testimony was not to disregard the law.

■ IM & R's argument as to punitive damages involves a misunderstanding of *Montana ex rel. Vranish v. District Court, 1st Judicial District*, 228 Mont. 59, 741 P.2d 412 (1987), which IM & R claims stands for the proposition that all common law fraud counts become statutory claims when attached to claims brought under the Montana Securities Act. *Vranish* stands for no such proposition. It is no barrier to the award of punitive damages by the arbitrators.

The contention by IM & R that the arbitrators were evidently partial is a restatement of IM & R's position on the law—because the arbitrators were, in IM & R's opinion, wrong on the law, they must have been partial. This self-serving contention is without merit.

■ IM & R has persisted in resisting an arbitrators' award which its own form contract made possible. It has failed to understand the very limited review now available in federal court. It has presented meritless opposition. There is no reason that the cost of this prolonged and frivolous resistance should be imposed upon R & R. Accordingly, upon a showing of its costs and attorneys' fees, R & R will be awarded its attorneys' fees in the district court and in this court, and double its costs in both courts. 28 U.S.C. § 1912 (1988); Fed.R. App.P. 38.

AFFIRMED. Attorneys' fees and double the amount of costs in both courts

awarded to the appellee Rostad and Rostad Corporation.