*Expected salary = B + 200 × years of service + 300 × years of education*

(2) The motion is denied in all other respects.

**Laura A. PARK, Petitioner,**

v.

**FIRST UNION BROKERAGE SERVICES, INC., Respondent.**

No. 95–1574–CIV–T–17E.

United States District Court, M.D. Florida, Tampa Division.

May 29, 1996.

Jonathan L. Alpert, Patrick B. Calcutt, Chris A. Barker, Alpert, Barker & Calcutt, P.A., Tampa, FL, for plaintiff.

Gary Lee Sasso, Mary S. Scriven, Cathleen G. Bell, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, for defendant.

## *ORDER*

KOVACHEVICH, District Judge.

This cause is before the Court on the following motions and responses:

1. Petition by Laura A. Park (hereinafter "Park") to Confirm Arbitration Award (Docket No. 1) and Memorandum in Support of Petition to Confirm Arbitration Award (Docket No. 2).

2. Respondent First Union Brokerage Services, Inc.'s (hereinafter "FUBS") Motion to Vacate Arbitration Award (Docket No. 9) and Legal Memorandum in Support of Respondent's Motion to Vacate and in Opposition to Petition to Confirm Arbitration Award (Docket No. 10).

3. Petitioner's Response in Opposition to Motion to Vacate Arbitration Award (Docket No. 15).

4. Petitioner's Motion to Strike Notice of Filing Deposition (Docket No. 23) and Memorandum in Support of Motion to Strike (Docket No. 24).

5. Respondent's Memorandum in Opposition to Motion to Strike Notice of Filing Deposition (Docket No. 28).

### FACTUAL BACKGROUND

Laura A. Park, an associated person of the National Association of Securities Dealers, Inc. (hereinafter "NASD"), was employed by FUBS as a licensed salesperson during the late 1980's until mid–1994 when she was terminated. FUBS is a member of NASD.

Pursuant to Park's securities registration and FUBS' membership in the NASD, the parties had agreed to arbitrate disputes. By

NASD rule, a broker-dealer must arbitrate any dispute that arises between it and one of its present or former employees.

Park filed her Statement of Claim with the NASD on September 7, 1994, and signed Claimant's Submission Agreement on July 25, 1994. The Statement of Answer and Counterclaim was filed by FUBS on December 5, 1994, amended on April 17, 1995 and June 9, 1995, and Respondent's Submission Agreement was signed on December 2, 1994. Park's Answer to Counterclaim was filed on December 16, 1994, and the Reply to Amended Answer was filed on April 27, 1995. The Uniform Submission Agreement entered into by the parties included, *inter alia,* an agreement that they would abide by and perform any award(s) rendered pursuant to the Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s).

Park alleged that: 1) FUBS wrongfully terminated her employment in unlawful retaliation for complaints and objections regarding Respondent's sales practices; 2) FUBS defamed her with malice; 3) FUBS intentionally interfered with her business relationships; 4) FUBS intentionally committed extreme and outrageous conduct causing emotional distress; and 5) FUBS unlawfully withheld wages and commissions due her. Park requested actual damages in an amount in excess of one million dollars ($1,000,-000.00), plus punitive damages of one hundred million dollars ($100,000,000.00).

FUBS denied all of the allegations of wrongdoing and alleged that Park was properly terminated for procuring the assistance of an unlicensed person to sell mutual funds to the public. FUBS additionally alleged a whole host of other defenses and counterclaimed against Park alleging that she owed a duty to FUBS to abide by its policies, to adhere to the rules of NASD, and not to expose FUBS to unreasonable risk of loss. FUBS alleged that Park breached those duties and as a result caused injury to FUBS in excess of ten thousand dollars ($10,000.00).

On September 20, 1995, a three-member arbitration panel awarded Park $272,045.00 in compensatory damages and $500,000.00 in punitive damages.

## STANDARD OF REVIEW

Title 9, United States Code, § 9 provides, in pertinent part, that at any time within one (1) year after an award is made, any party to the arbitration may apply to the appropriate court for an order confirming the award. The court must grant such an order unless the award is vacated, modified, or corrected as set forth in sections 10 or 11 of title 9. *See* 9 U.S.C. § 9.

Section 10 sets out the exclusive statutory grounds for vacating an arbitration award. It allows the award to be vacated:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

In addition to the four (4) statutory grounds delineated above, the Eleventh Circuit Court of Appeals has recognized two (2) additional non-statutory bases upon which an arbitration award may be vacated. *Brown v. Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775, 779 (11th Cir.1993). "First, an arbitration award may be vacated if it is arbitrary and capricious." *Id.* at 779. "Second, an arbitration award may be vacated if enforcement of the award is contrary to public policy." *Id.* at 779. A third non-statutory ground for vacating an arbitration award—manifest disregard of law—has been recognized in some circuits, though not in the Eleventh Circuit.

*Id.* at 779.[1]

■ When considering an award which sets forth its rationale, as the award in this case does, "the party seeking vacatur may raise any of the statutory or non-statutory grounds in support of its motion to vacate the award." *Id.* at 779.

## DISCUSSION

FUBS makes three (3) arguments for vacatur in this case. First, that there was evident partiality in the arbitrators. Second, that the panel's decision was procured by undue means because the panel exceeded its powers and rendered a decision that exhibits a wholesale departure from the law and a manifest disregard of applicable law. Third, that the award of punitive damages should be vacated because FUBS was denied due process.

### I. Evident Partiality

FUBS' allegation of evident partiality centers upon the contention that the NASD staff consciously sought to skew the panel in Park's favor when selecting the panel by ensuring the presence of a woman. Initially, one of the arbitrators selected, a female, was challenged by Park for cause and was struck and replaced, by another female. FUBS allegation is that when the arbitrator was replaced, NASD "rigged" the panel based upon the gender of prospective panelists and this created at least "an appearance of bias."

■ Title 9 U.S.C. § 10(a)(2) requires a showing of evident partiality *in the arbitrators*. Even accepting FUBS' allegation that NASD went out of its way to replace a female with a female, FUBS has completely failed to demonstrate any evident partiality **in the individual arbitrators** that sat on the case. This Court reviewed the portion of the transcript submitted by Petitioner, and can find no instance that could remotely be considered evident partiality by any of the arbitrators. FUBS points to no portion of the

record that would indicate *any* evidence of partiality on the part of the arbitrators in this case, much less evident partiality. Furthermore, the panel returned a unanimous award for Park. The method for challenging the arbitrators on the panel was systematically and properly employed and a panel acceptable to all parties, at the inception of the proceedings, was employed.

■ As far as FUBS contention concerning the "appearance of bias" discussion in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), this Court agrees with Judge Conway's analysis as set forth in *Austin South I, Ltd. v. Barton–Malow Co.*, 799 F.Supp. 1135 (M.D.Fla.1992). "In a plurality opinion 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ...' " *Austin South*, 799 F.Supp. at 1141 (quoting *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993–94, 51 L.Ed.2d 260 (1977)). "The concurring opinion in *Commonwealth Coatings* restricted the scope of the holding to situations where an arbitrator fails to disclose a substantial relationship with a party and did not adopt an 'appearance of bias' standard." *Id.* at 1141.

■■ " 'Evident partiality' exists 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration'; a mere 'appearance of bias' is insufficient to vacate an arbitration award." *Id.* at 1142 (quoting *Morelite Construction Corp. (Division of Morelite Electric Service, Inc.) v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83–84 (2d Cir.1984)).

Furthermore, this Court finds FUBS' allegations about the make-up of the panel in this case difficult to accept even under an "appearance of bias" standard. The only case brought forth by FUBS to make its case is *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct.

---

**1.** The Court acknowledges FUBS' argument that *First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, ——, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995) (quoting *Wilko v. Swan*, 346 U.S. 427, 436–437, 74 S.Ct. 182, 187–188, 98 L.Ed. 168 (1953)) "reaffirms" that parties are bound by an

arbitrator's decision that is not in manifest disregard of the law. However, the issue involved in *First Options*, concerned the arbitrability of an arbitration agreement and did not directly address the viability of this potential third non-statutory basis for vacating an arbitration award.

1419, 128 L.Ed.2d 89 (1994), the equal protection case that precludes peremptory challenges of jurors based solely upon gender.[2] Since the Court finds no evident partiality in the arbitrators, it is unnecessary to delve into FUBS' collateral "reverse" gender discrimination attack on the make-up of the arbitration panel. In short, the Court rejects FUBS' contentions based upon any sort of gender bias theory.

## II. Undue Means

FUBS attempts to couch its argument that the arbitrators exhibited a manifest disregard of applicable law in the terms of 9 U.S.C. § 10(a) subsection (1) "the award was procured by undue means" and subsection (4) "the arbitrators exceeded their powers", when in effect the thrust of their argument is that there was a manifest disregard of law, the third non-statutory basis for vacatur that has not been clearly accepted by the Eleventh Circuit Court of Appeals. *Ainsworth v. Skurnick,* 960 F.2d 939, 941 (11th Cir.1992). No matter which standard is applied, however, there has not been a "wholesale departure from the law" or a "manifest disregard for the law" and FUBS' argument is therefore without merit.

The thrust of FUBS' claim is that the arbitrators, when applying Florida's Whistleblower Act, Fla.Stat. §§ 448.101–105 (1993), erred by not requiring that Park give notice to FUBS in writing, rather than orally, of the alleged improper sales practices committed by FUBS. FUBS cites an unpublished order entered by Judge Bucklew in *Martin v. Honeywell Inc.* on July 18, 1995, interpreting the statute as requiring written notice. However, subsequent to the arbitration but prior to the entry of the award, Florida's Third District Court of Appeal interpreted the exact statutory language as not requiring the written notice. See *Baiton v. Carnival*

Cruise *Lines, Inc.,* 661 So.2d 313 (Fla. 3d DCA 1995).

■ "A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983).

■ Respondent encourages this Court to interpret the statute consistent with Judge Bucklew's decision in *Martin.* However, the mere fact that there are two (2) courts that have interpreted the same statutory language in different ways, one entirely refuting Respondent's legal argument, totally vitiates any potential "manifest disregard" or "wholesale departure" from the law. Thus, there is no need for this Court to make an independent legal conclusion about the statute.[3] To undertake such a task would most assuredly exceed this Court's authority in reviewing the arbitrator's award.

## III. Due Process

■ "[I]t is axiomatic that ... only state action is subject to scrutiny under the Due Process Clause." *Davis v. Prudential Securities, Inc.,* 59 F.3d 1186, 1190–1191 (11th Cir.1995). FUBS recognizes that *Mastrobuono v. Shearson Lehman Hutton, Inc.,* — U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), and *Davis,* preclude a finding of state action in private arbitration cases. FUBS endeavors to distinguish these precedents on the argument that the arbitration between employer and employee pursuant to NASD procedures is not voluntary, and, therefore, not "a private proceeding arranged by a voluntary contractual agreement of the parties." *Davis,* 59 F.3d at 1190.

It is this Court's view that First Union is no more "compelled" to arbitration than is one of its customers who, in order to open an

2. Though FUBS attempts to invoke the public function doctrine in support of its due process argument, no theory of state action is put forth in support of this equal protection argument.

3. Furthermore, the Court does note that the statute is truly ambiguous when applied to the particular question presented by this case and the

two (2) aforementioned cases. The fact of the matter is that the "plain language" of the statute may be readily interpreted as supporting either view. Additionally, FUBS has presented no persuasive indication that the Florida Supreme Court would decide the issue differently than the 3d DCA in *Baiton.*

account with it, signs a standard form contract with an arbitration clause.

If an individual wishes to trade securities they must deal through a broker that provides them access to the market. If they don't sign a broker's agreement, they don't participate in the market. Similarly, if First Union doesn't like the NASD arbitration requirement, it could choose not to participate in the securities business.[4] The distinction of calling the former voluntary and the latter compelled is, frankly, specious and insincere. *See Davis*, 59 F.3d at 1193, n. 7 ("Of course, it is no secret that the securities industry has consistently favored the expeditious forum of arbitration as the preferred method for resolving disputes."; and "[h]aving enthusiastically welcomed the enforcement of agreements to arbitrate, the securities industry might be expected not to encourage retrial of a case in federal court." quoting *Rostad & Rostad Corp. v. Investment Management & Research, Inc.*, 923 F.2d 694, 697 (9th Cir. 1991)). *See also Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (Supreme Court enforced an arbitration clause signed by an employee as a part of the employment agreement, and required the plaintiff employee to arbitrate his ADEA claim.).

It simply defies credulity for FUBS to argue that "this is not a situation where a party is later complaining about the 'adequacy of the procedures afforded by the forum of its own choosing.'" FUBS Legal Memorandum in Support of Respondent's Motion to Vacate and in Opposition to Petition to Confirm Arbitration Award, page 17 (quoting *Davis*, 59 F.3d at 1193).

■ Finally, as a corollary to its Due Process argument, FUBS posits that the review provided by this Court under the Federal Arbitration Act violates Due Process because it is not meaningful and effective judicial review of the punitive damage award. Without deciding whether due process protections attached in a case involving a similar challenge by a brokerage firm, the Sixth Circuit Court of Appeals found that "the

manifest disregard of the law standard permits the vacatur of those punitive damage awards that are supported by no evidence." *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132 (6th Cir.1996). While this Circuit has not fully accepted the manifest disregard of the law standard, the arbitrary and capricious standard would surely afford sufficient protection. *See Ainsworth*, 960 F.2d at 941. This case is not representative of a "grossly excessive" award that cries out for vacatur. *See B.M.W. of North America, Inc. v. Gore*, —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

### IV. Motion to Strike Notice of filing Deposition

Petitioner's Motion to Strike Notice of filing deposition is granted. Both parties have utilized this particular filing to continue with legal argument beyond that authorized by Local Rule 3.01(b). FUBS argues that "[t]his Court has set no time limit for taking discovery in this matter . . .". *See* Memorandum of First Union Brokerage Services, Inc. in Opposition to Petitioner's Motion to Strike Notice of Filing Deposition, page 3.

■ However, this "matter" is the review of an arbitration award governed by the Federal Arbitration Act. Nowhere in the Act is there any indication that discovery is allowed. The Court does not accept FUBS apparent argument that what is not expressly prohibited is allowed. Rather, the efforts by FUBS in this "discovery" suggest that it is merely a "'tactical response to having lost the arbitration,' or an inappropriate attempt to seek a 'second bite at the apple' because of dissatisfaction with the outcome." *Hobet Mining v. International Union, United Mine Workers of America*, 877 F.Supp. 1011 (S.D.W.Va.1994) (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680–81 (7th Cir., *cert. denied* 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983); and quoting *Remmey v. Paine Webber, Inc.*, 32 F.3d 143, 146 (4th Cir.1994)).

---

4. Furthermore, NASD is an organization of securities dealers, of which FUBS is a member, who "voluntarily" come together to police and regulate themselves. No case has been presented by FUBS, nor has this Court found any precedent for holding NASD to be a state actor.

The Court finds the Notice of filing deposition and the filing of that deposition by FUBS to be inappropriate, and, therefore it shall be stricken from the record. Additionally, all of the exhibits filed by Park in response to the filing of the deposition are also stricken. Accordingly, it is

**ORDERED and ADJUDGED** that the Petition by Laura A. Park to Confirm the Arbitration Award (Doc. No. 1) **BE GRANTED** and the Clerk of the Court is directed to enter Judgment for Petitioner; and it is further

**ORDERED and ADJUDGED** that the Motion of First Union Brokerage Services to Vacate the Arbitration Award (Doc. No. 9) **BE DENIED;** and it is further

**ORDERED** that the Clerk of the Court SHALL STRIKE the Notice of Filing the Deposition Transcript of Dawnalee Texera (Doc. No. 22), and the separate filing of the Deposition as Exhibit A with Exhibits B–C, and the Notice of Filing Deposition Exhibit by Laura A. Park (Doc. No. 25) and the accompanying exhibits; and it is further

**ORDERED** that the parties shall retrieve the stricken transcript and exhibits from the Clerk of the Court within ten (10) days of the entry of this Order. Should no party retrieve these documents, the Clerk of the Court shall dispose of them appropriately.

**DONE AND ORDERED.**