714 So.2d 558 (1998)
Martin JENKINS, Appellant,
v.
The GOLF CHANNEL a/k/a, TGC, Inc., Appellee.
No. 97-2049.
District Court of Appeal of Florida, Fifth District.
June 26, 1998.
Keith R. Mitnik of Morgan, Colling & Gilbert, P.A., Orlando, for Appellant.
*559 Catherine Branning Rodriguez, Kimberly A. Wells, and Anthony J. Hall, of Jackson, Lewis, Schnitzler & Krupman, Orlando, for Appellee.
PER CURIAM.
Martin Jenkins appeals a final judgment dismissing his complaint against the Golf Channel, a/k/a, TGC, Inc., for failure to state a cause of action under Florida's Whistle Blower Protection Act, §§ 448.101, et seq., (1995). His complaint alleged that he was fired for having disclosed his fellow employees' acts of fraud, falsification of reports, plagiarism and sexual harassment.
Jenkins' amended complaint included the following allegations of TGC's activities:
7. The Plaintiff [Marty Jenkins] objected to and reported the Vice-President of production, MIKE WHELAN, after the plaintiff heard from two (2) female employees of the Defendant that MIKE WHELAN had masturbated in front of them ...
* * * * * *
C. MARTY JENKINS believed the activity of MIKE WHELAN to be illegal, and/or in violation of rules and regulations, and detrimental to these employees as well as to the company that was being exposed to legal actions for sexual harassment;
D. MARTY JENKINS felt compelled to report the activity and to object to it;
E. In late May, 1995, MARTY JENKINS reported the activity to his immediate supervisor, PAUL FARNSWORTH, the Coordinating Producer;
F. MARTY JENKINS insisted that PAUL FARNSWORTH report the activities of MIKE WHELAN to BOB GREENWAY, the Senior Vice President of programming and Production, or else MARTY JENKINS would report it directly to him;
G. MARTY JENKINS wanted to make a written report of the activity, but he was prohibited by his supervisor, PAUL FARNSWORTH, who instructed him not to make such a written report;
H. As a result of the report, no adequate or meaningful remedy occurred.
I. THE GOLF CHANNEL, by and through the above described actions of its employee and officer, MIKE WHELAN, was in violation of laws, rules and regulations including, but not limited to, Title VII of the Civil Rights Act of 1964 and/or Florida Statutes § 760.10 for the sexual harassment of female employees;
8. The Plaintiff objected and refused to participate in the planned activities of MIKE WHELAN and PAUL FARNSWORTH to deceive vendors for personal gain, to wit:
A. MIKE WHELAN and PAUL FARNSWORTH instructed a camera crew to pretend filming for feature stories and/or advertisements on vendors or their products for the purpose of obtaining free equipment from these vendors such as expensive golf clubs. The crew was instructed not to actually film anything;...
* * * * * *
C. The Plaintiff, MARTY JENKINS, believed this conduct to be a violation of the law and/or rules and regulations;
D. The Plaintiff, MARTY JENKINS, objected to, refused to participate in, and reported the conduct of MIKE WHELAN and PAUL FARNSWORTH, to the Chief Financial Officer, JIM LOWERY;
E. The reported conduct violated laws, rules and regulations including, but not limited to, Florida Statutes § 501.201-501.204 (the Florida Deceptive and Unfair Trade Practices Act), 15 U.S.C. 45 (the Federal Trade Commission Act), the Uniform Commercial Code, F.S. § 817.03, § 817.05, § 817.15 (fraud), and/or Florida Statutes Chapter 895 (RICO);
9. The Plaintiff objected to and refused to participate in plagiarism on the part of THE GOLF CHANNEL, to wit:
A. PETER KESSLER was the "Talent" for the Master's series and was employed by THE GOLF CHANNEL. He was responsible for writing the scripts and performing them on camera;

*560 B. The Plaintiff was the producer of this series ...
C. The Plaintiff discovered that the scripts were verbatim plagiarism from books about the Master's Golf Tournament and believed this plagiarism to be in violation of the law, rules and/or regulations;
D. The Plaintiff reported the plagiarism to PAUL FARNSWORTH and MIKE WHELAN;
E. The shows had to be pulled from the air and re-done;
F. The plagiarism violated laws, rules and regulations including, but not limited to, federal copyright laws, including Title 17 of the United States Code.
10. The Plaintiff objected and refused to participate in efforts to falsify manpower and budget reports for the purpose of inflating productivity of the production department to an outside consultant, to wit:
A. The Plaintiff prepared accurate manpower and budget reports from the production department. PAUL FARNSWORTH requested he sign changed reports which falsely inflated the activity of the production department....
* * * * * *
C. The Plaintiff believed the reports were to be provided to an outside consultant who was evaluating the productivity of the various departments for the sale and/or financing of THE GOLF CHANNEL. The purpose was to falsely inflate the productivity and value of the company to enhance the opportunity of sale and profit.
D. The Plaintiff believed the submission of the falsified reports would be in violation of the law, rule or regulation, and refused to sign the changed and inflated reports;
E. The Plaintiff reported the incident to the Chief Financial Officer, JIM LOWERY, and to the Vice-President of Finance, DELL WOOD.
F. The falsification of such reports for use in the sale, financing or other outside evaluation of the company violates laws, rules and regulations including, but not limited to 15 USCS § 17(a) and 77 (Securities Act), Chapter 47 of the United States Code, Florida Statutes § 501.201-501.204 (the Florida Deceptive and Unfair Trade Practices Act), 15 U.S.C. 45 (the Federal Trade Commission Act).
11. The Plaintiff reported other violations of laws, rules and regulations of the Defendant committed by PAUL FARNSWORTH and MIKE WHELAN.
The Whistle Blower's Act provides in pertinent part:
448.102. Prohibitions.
An employer may not take any retaliatory personnel action against an employee because the employee has:
(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule or regulation by the employer.
(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule or regulation.
448.103. Employee's remedy; relief
(1)(a) An employee who has been the object of a retaliatory personnel action in violation of this act may institute a civil action in a court of competent jurisdiction for relief as set forth in subsection (2) within 2 years after discovering that the alleged retaliatory personnel action was taken, or within 4 years after the personnel action was taken, whichever is earlier.
* * * * * *

*561 [1] (c) An employee may not recover in any action brought pursuant to this subsection if he or she failed to notify the employer about the illegal activity, policy, or practice as required by s. 448.102(1) or if the retaliatory personnel action was predicated upon a ground other than the employee's exercise of a right protected by this act.

[Emphasis added]. TGC moved to dismiss on the grounds that Jenkins failed to allege that he complained about the incidents in writing as required by subsection 448.102(1). Jenkins responds by urging that written notice is required only when an action is brought pursuant to subsection 448.102(1), that his action was brought pursuant to subsection (3), and that no written notice is required under that subsection.
In response, TGC argues that written notice, and a reasonable opportunity to cure the problem, applies to all whistle blower actions. TGC urges that because the required written notice was not given, the trial court correctly dismissed Jenkins' complaint.[1]
The notice requirement of section 448.102, when read apart from section 408.103, appears to apply only to subsection (1). Notice and opportunity to cure is not mentioned in the other subsections. However, subsection 448.103(1), setting forth an employee's remedy for being the victim of retaliatory conduct by an employer, creates an ambiguity or uncertainty as to whether the notice provision is limited to violations of subsection (1) of section 448.102, or whether it applies to all three types of whistle blower violations described in section 448.102. Paragraph (c) of subsection 448.103(1) provides that an employee may not recover in any action if he fails to notify his employer "as required by section 448.102(1)." One conclusion that could be drawn is that paragraph (c) of subsection 448.102(1) incorporates the notice requirement to all three types of actions.
Whether written notice to the employer is a required element of all whistle blower actions has been addressed in two Florida cases. Each reached opposite conclusions. In Baiton v. Carnival Cruise Lines, Inc., 661 So.2d 313 (Fla. 3d DCA 1995), the third district held that the notice requirement applied only to actions under subsection 448.102(1). Baiton, an employee of Carnival Cruise Lines, agreed to testify on behalf of a fellow employee in the latter's lawsuit against Carnival. Baiton alleged that Carnival attempted to compel him to lie in this other lawsuit and he refused. Baiton was then fired and brought an action against Carnival under the Whistle Blower Act. The trial court dismissed Baiton's complaint with prejudice. On appeal, Carnival argued that the dismissal was proper because Baiton had failed to give Carnival written pre-suit notice. The third district disagreed, explaining as follows:
Under subsection 448.102(1), Florida Statutes, an employer may not take a retaliatory personnel action against an employee who has disclosed or threatened to disclose `an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation.' The statute goes on to say, `However, this subsection [emphasis in original] does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.' Id.

The reference to `this subsection' means subsection 448.102(1). Consequently, where an employee asserts a violation of subsection 448.102(1), the employee is required to give written notice to the supervisor or employer and an opportunity for the employer to correct the activity, policy, or practice. Similarly, if the employee brings a lawsuit against the employer alleging a violation of subsection 448.102(1), the employee may not recover `if he failed to notify the employer about the illegal activity, policy, or practice as required by s. 448.102(1).' Id. § 448.103(1)(c) [emphasis in original] [footnote omitted].

*562 This written notice requirement only applies to subsection 448.102(1). There is no comparable written notice requirement for a claim made by an employee under subsection 448.102(2), relating to governmental investigations, or subsection 448.102(3), relating to an employee objection to, or refusal to participate in, `any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.' Id. § 448.102(3). In the present case Baiton is proceeding under subsection 448.102(3). As there is no written notice requirement for subsection 448.102(3), Carnival's objection on this point is not well taken.
661 So.2d at 316.
The second district reached the opposite conclusion in Potomac Systems Engineering, Inc. v. Deering, 683 So.2d 180 (Fla. 2d DCA 1996). In that case, Deering alleged that he had been fired after he refused to participate in misconduct relating to the use of government equipment. Potomac denied these allegations and claimed that Deering was terminated because he had made certain statements which jeopardized the company's relationship with the government. The jury found in favor of Deering.
On appeal, the employer argued that Deering did not have a cause of action under the Whistle Blower's Act because he did not provide written notice. Deering contended that an employee's cause of action does not depend on written notice unless the employee is acting pursuant to section 448.102(1). The second district rejected this argument:
Section 448.103(1) affords a remedy to employees who have been retaliated against for actions they have taken pursuant to either section 448.102(1), 448.102(2) or 448.102(3). This remedy is only available, however, if the employee has complied with section 448.103(1)(c). We read section 448.103(1)(c) to provide that an employee may not recover in any action brought pursuant to section 448.103(1) if he fails to notify the employer about the illegal activity, policy, or practice as required by section 448.102(1), i.e, in writing, bringing the activity, policy, or practice to the attention of a supervisor or the employer and affording the employer a reasonable opportunity to correct the activity, policy, or practice.
Although we recognize that the whistle blower's act is designed to encourage employees to report certain violations without fear of reprisal, we do not believe it is unduly burdensome to require employees to notify their employer of their complaint in writing before being entitled to the civil remedies provided by the act. The requirement promotes the purpose of the act by affording the employer the first opportunity to correct a violation. This allows the employer to avoid, among other things, unnecessary harm to its reputation, the burden of undergoing an investigation and preparation for a hearing or trial.
683 So.2d at 182.
In Martin v. Honeywell, Inc., 1995 WL 868604 (M.D.Fla.1995), the federal district court, in an unpublished opinion, likewise held that the notice requirement applies to all whistle blower actions:
Whether or not written notice to the employer is a required element of a whistleblower claim appears to be a question of first impression in Florida. The Court finds that the plain language of the statute imposes a written notice and opportunity to cure requirement as an element of proof in every private sector whistleblower claim because 448.103(1)(c) incorporates the notice provision set forth in 448.102(2).
In Park v. First Union Brokerage Services, 926 F.Supp. 1085 (M.D.Fla.1996), the same federal district followed the third district's Baiton decision noting the ambiguity of the statute and the fact that a federal court district is to adhere to the decisions of the "state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." Park, 926 F.Supp. at 1089. The notice requirement has also been the topic of two Florida Bar Journal articles. Compare Baiton v. Carnival Cruise Lines: An Important Decision in The Evolution of Florida's Whistle Blower's Act, 70 May Fla. B.J. 59 (1996) (author concluded that the third district in Baiton reached a just result) with Another Look at the Notice Requirements of the Florida Private Sector Whistle Blower's *563 Act, 71 Nov. Fla. B.J. 43 (1997) (author argues that the written notice requirement must apply to all whistle blower actions).
The Whistle Blower's Act is remedial in nature and so should be liberally construed. See Schultz v. Tampa Electric Co., 704 So.2d 605 (Fla. 2d DCA 1997); see also Arrow Air, Inc. v. Walsh, 645 So.2d 422 (Fla.1994). The purpose of the Whistle Blower's Act is to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public. Arrow Air; Vanacore v. UNC Ardco, Inc., 697 So.2d 892 (Fla.App.1997). Requiring written notice and an opportunity to cure would seem to frustrate the intent of the Legislature in many circumstances. For example, under subsection 448.102(2), the employee may not be allowed to give notice if called to testify before a "closed door" investigation. Under subsection 448.102(3), the employee has already objected or refused to participate in alleged illegal activities so written notice to the employer to cure would be superfluous. Furthermore, consider an employee who is terminated on the spot by his supervisor for refusing to dump hazardous waste in a waterway. No opportunity is reasonably available to deliver the so-called required written notice in such a case. If the legislature, for some reason, meant to require the employee to protest the termination after the fact with a written notice addressed generally to the employer, it has missed the mark with the confusing language of this statute.
The ambiguity in sections 448.102 and 448.103 can be resolved by recognizing that each section operates in its own sphere. Section 448.102 outlines three different "prohibitions." Under subsections 448.102(2) and (3), retaliatory action against an employee who provides information pursuant to a government investigation or objects to his / her employer about any illegal activity is prohibited unconditionally. Under subsection 448.102(1), retaliatory action against an employee who has disclosed or threatens to disclose, in writing and under oath, information to a government agency regarding an illegal activity is prohibited only if the required notice and opportunity to cure has been given. Section 448.103 provides for the remedies and relief available when the prohibited retaliatory acts set forth in section 448.102 occur. We conclude paragraph (c) of subsection 448.103(2), read in pari materia with section 448.102 and the other portions of section 448.103, and in light of the general intent behind the Whistle Blower's Act, can only reasonably be interpreted as meaning that written notice and opportunity to cure as a precondition to bringing suit only applies to alleged violations of subsection 448.102(1).
TGC alternatively argues that Jenkins' whistle blower action has been preempted by the Florida Civil Rights Act of 1992, sections 760.01-760.11.[2] We find no limitation in the Civil Rights Act which provides that it is the exclusive remedy for employment discrimination.
We align ourselves with the third district in the interpretation of the Whistle Blower's Act's notice provisions, certify conflict with the second district, vacate the order dismissing Jenkins' complaint, and remand for further proceedings.
CONFLICT CERTIFIED; ORDER VACATED; and REMANDED.
COBB, GOSHORN and PETERSON, JJ., concur.
NOTES
[1] Jenkins mentions in passing that he attempted to have the dismissal be without prejudice so that he could amend the complaint and add an allegation referring to a written notice given on May 19, 1997. However, if notice is required at all, it would appear that the notice must be pre-suit. This notice in 1997 was after the lawsuit was filed.
[2] Section 760.10(7) provides that it is an unlawful employment practice for an employer to discriminate against any person because that person has opposed any unlawful employment practice or has testified, assisted or participated in any investigation of an unlawful employment practice.