960 So.2d 830 (2007)
AMERICAN AIRLINES, INC., Appellant,
v.
Arthur GEDDES, Appellee.
No. 3D05-737.
District Court of Appeal of Florida, Third District.
July 5, 2007.
*831 Hunton & Williams and Terence G. Connor and Grace M. Mora and Christopher P. Hammon and Lisa R. Askowitz, Miami, for appellant.
Denise V. Powers, Coral Gables, for appellee.
Before FLETCHER, SHEPHERD, and SUAREZ, JJ.
PER CURIAM.
American Airlines, Inc. appeals from a final judgment entered pursuant to a jury verdict in an action for defamation and negligent supervision. We reverse.
Arthur Geddes sued his employer, American, and its human resources manager, Terry Meenan, for defamation (and American for negligent supervision). Geddes claimed he was defamed by statements made in the course of an investigation of a charge brought against him by a co-worker. Geddes had been employed as an aircraft mechanic for about 20 years when in June of 2001 a certain friction developed in his unit over the placement of personal computers. The mechanics had begun bringing their personal computers from home, keeping them in a closet area near the break room where the mechanics await their work assignments.
On June 19, Geddes came into the break room and found that the cabinet containing his computer had been rolled out of the closet and left in an open area. He *832 complained about this to his supervisor, Garnett Pennant, telling him he suspected mechanic Mike Coombs. The supervisor interviewed both men, and when Coombs denied any involvement, he told both men that if any computers were allowed in the area then Geddes' computer was also allowed. On June 25, 2001, another mechanic, Ernest Suarez, complained aloud that too many computers were cluttering up the area. Geddes, who was using his computer in the closet at the time, heard the statement and the two men got into an argument. Later that day, Suarez reported to supervisor Jose De Fran and manager Pedro Lau that Geddes, while holding a two-foot metal bar in his hand, had threatened to "cut out his intestines."
De Fran and Lau began an investigation of Suarez' claim. They first talked with mechanics identified by Suarez as witnesses to the verbal exchange. The men denied seeing or hearing anything. Next, De Fran and Lau talked to Geddes to get his side of the story. Although he denied making any threats, De Fran and Lau did not believe Geddes, and suspended him pending further investigation. Meenan, who as the human resources manager was responsible for investigating disciplinary problems, was out of town at the time of the incident. Upon her return, she took over the investigation.
Meenan interviewed Geddes in the presence of his representative, shop steward Jimmy Knapp. Geddes initially denied that anything had occurred, but, after speaking privately with Knapp, he admitted to using other than `church talk' with Suarez and telling him "If you touch my computer, you'll see what happens." Geddes identified another mechanic, Eduardo Romero, as someone who witnessed the incident. Although acknowledging that the two men got into a heated argument, Romero stated that Geddes did not threaten to cut Suarez. Meenan then re-interviewed Suarez who confirmed his prior statements. She also went back and talked to the other mechanics identified as witnesses, including those involved in the June 19 incident. According to standard practice, Meenan kept the maintenance department's chief operating officer, Luther Brewster, informed of her investigation.
On July 17, 2001, Meenan met with Geddes to communicate the results of her investigation. Geddes was to be issued a "first advisory" which is the first step in American's progressive discipline policy. Meenan helped De Fran prepare the advisory. After communicating it to Geddes, the first advisory and a "counseling record" memorializing receipt of the advisory were placed in Geddes' personnel file.[1] Regrettably, this did not bring an end to the situation. Later that same day, manager Mike Smith called Meenan and asked her to talk to some of the mechanics who were asking questions about Geddes' suspension. It seems that rumors had begun to circulate among the mechanics concerning the incident. At the meeting, Meenan refused, on the grounds of confidentiality, to discuss the particulars of Geddes' situation. While generally addressing the company's workplace policies, however, she referred to examples of sexual harassment and incidents of shooting in other workplaces that were in the news.
Geddes maintains that American's investigation was maliciously motivated because of a prior suit against his employer.[2] *833 Meenan was the only person involved in the investigation who was aware of the prior action as it was not in Geddes' personnel file. She testified that she became aware of the existence of a judgment against Geddes, but not its particulars, after his suspension and interview, but before she brought him back to work. Meenan indicated that the judgment did not play any part in her recommendation.
The case was tried to a jury which came back with a somewhat confusing verdict. Both American and Meenan were found to have published a defamatory statement about Geddes. Meenan's statements were determined to be true, uttered in good faith, privileged and made without malice. The exact opposite was found regarding American's statements. (American was also found guilty of negligent supervision.) Thus, the verdict was in favor of Geddes against American, but exonerated Meenan. Negligence was attributed 90% to American and 10% to Geddes, with total damages of $100,000 awarded. We believe the trial court erred in entering final judgment on this verdict.
To recover in a defamation action, a plaintiff must show that the defendant published false and defamatory statements concerning him, without reasonable care as to whether those statements were true or false, which resulted in actual damage to the plaintiff. See, e.g., Byrd v. Hustler Magazine, Inc., 433 So.2d 593 (Fla. 4th DCA 1983); Miami Herald Publ'g Co. v. Ane, 423 So.2d 376, 388 (Fla. 3d DCA 1982). Words are defamatory when they "tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." Seropian v. Forman, 652 So.2d 490, 495 (Fla. 4th DCA 1995) (citing Adams v. News-Journal Corp., 84 So.2d 549 (Fla.1955)).
A defamatory statement does not become actionable, however, until it is published or communicated to a third person; statements made to the person alleging the defamation do not qualify. See e.g., American Ideal Mgmt., Inc. v. Dale Village, Inc., 567 So.2d 497, 498 (Fla. 4th DCA 1990); Granda-Centeno v. Lara, 489 So.2d 142, 143 (Fla. 3d DCA 1986). When the entity alleged to have committed the defamation is a corporation, the courts have held that statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication. See, e.g., Lopez v. Ingram Micro, Inc., 1997 WL 401585, 10 Fla. L. Weekly D635 (S.D.Fla. Mar 18, 1997); Hayes v. Wal-Mart Stores, Inc., 953 F.Supp. 1334 (M.D.Ala. 1996); Advantage Personnel Agency v. Hicks & Grayson, Inc., 447 So.2d 330 (Fla. 3d DCA 1984).
Moreover, one who publishes defamatory matter concerning another is not liable for the publication if the matter is published upon an occasion that makes it conditionally privileged and the privilege is not abused. See, e.g. Nodar v. Galbreath, 462 So.2d 803, 809 (Fla.1984); Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 592 (1906). "A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he had a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation." Nodar, 462 So.2d at 809 (citing 19 Fla. Jur.2d Defamation and Privacy § 58 (1980)).
In his complaint, Geddes alleges generally that American defamed him by republishing Suarez' statement to others and refusing to silence the rumors going *834 around. Neither the complaint nor the evidence presented at trial identifies the precise statements alleged to have been defamatory or the American employee making such statements (other than Meenan, who was exonerated by the verdict). Excluding all statements made by Meenan, it is difficult to determine from the record what other statements support the jury's finding of defamation against American. Assuming, for purposes of discussion, that some American employee, other than Meenan, repeated Suarez' account of the threat by Geddes while the matter was being investigated, we find that Geddes nevertheless failed to meet his burden of proof on the defamation claim. All communication between American executive/managerial employees are considered to be the corporation talking to itself, and, could not be the basis for any defamation claim because they lacked the essential element of publication to a third party. This, therefore, excludes any written or oral communications between executive and/or managerial personnel such as Garnett Pennant, Jose De Fran, Pedro Lau, Mike Smith and Luther Brewster.
With regard to statements made to non-managerial American personnel, the record establishes that they were either directed to coworkers identified by Geddes or Suarez as witnesses to the alleged threat, or other employees of the maintenance department who sought an explanation for Geddes' suspension. The former were an integral part of the investigation and the latter all had an interest in the disciplinary practices of their employer and in the safety and security of their workplace. These statements were, therefore, privileged.[3]
The claim for negligent supervision was based on the alleged defamation; as we have found no actionable claim of defamation, this claim also fails.
We, therefore, reverse the judgment below, and remand for entry of judgment in favor of American.
REVERSED AND REMANDED.
NOTES
[1] Access to an employee's file is limited to the employee, his supervisors (with a manager's permission), managers, and human resources personnel.
[2] Geddes sued American for race discrimination in federal court in 1997. American prevailed, obtaining a judgment against Geddes for fees and costs for over $56,000.
[3] Geddes points to Mike Coombs and Dan Brown as persons outside the investigatory process who did not have any privileged interest. But the testimony shows that Mike Coombs was brought into the investigation by Geddes himself when he accused Coombs of being responsible for the June 19 incident which preceded and involved the same matter leading to the altercation between Suarez and Geddes. Geddes also admits that Dan Brown inserted himself in the controversy when, after hearing about Geddes' suspension, he complained to Meenan about Geddes' unfair treatment and sought an explanation.