[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15156
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 12, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-02087-CV-T-17SCB-AEP

MATTHEW BUSH,

Plaintiff-Appellant,

versus

RAYTHEON COMPANY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 12, 2010)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Matthew Bush, pro se, appeals the district court's order granting summary

judgment to Bush's former employer, Raytheon Company ("Raytheon"), on

Bush's state law claims of retaliation pursuant to the Florida Whistleblower Act

and defamation. After review, we affirm.[1]

## I. BACKGROUND FACTS

### A. Bush's Employment at Raytheon

Bush worked as an electrical engineer in Raytheon's Saint Petersburg,

Florida office. In 2002, Raytheon provided engineering services to the Department

of Defense to develop the next generation, and reduce the size, of cooperative

engagement capability ("CEC") equipment. CEC is a classified program that

allows the military to paint a picture of a battlefield using remote sensing.

A Technical Instruction document, called Technical Instruction No. 30B or

TI30B, set the scope of the work and the government funding for it. According to

TI30B, Raytheon was "to improve specified equipment and technology with

respect to obsolescence and technology refresh issues."[2]

---

[1]We review a district court's grant of summary judgment de novo. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. Id.; see also Fed. R. Civ. P. 56(c)(2).

[2]Among other things, Raytheon was charged with: (1) conducting feasibility and impact studies for certain "interfaces that have obsolescence issues;" (2) planning and executing studies regarding the replacement of certain parts currently used in the CEC and in assessing the compatibility of a replacement processor; (3) developing and designing modifications to certain software; (4) updating system documentation; and (5) implementing design changes in "current DDS boards to provide technology upgrade, technical supportability, and obsolescence

2

In September 2002, as part of the CEC project, Bush attended a downconverter design review meeting.[3]  Another Raytheon employee, Bill Boler, stated that certain parts necessary to make the downconverter were no longer available, but that replacement parts had been found for them.  Because there were replacement parts, Bush believed a proposed redesign of the downconverter based on obsolescence was unnecessary and should not proceed.  Bush first claimed that he stated that the downconverter redesign violated the TI30B funding statement.  In his deposition Bush admitted that his statement in the meeting was "subtle" because it would have been unprofessional to accuse his colleagues of violating the funding statement outright.  Instead, Bush said that the engineers needed to "look at [their] funding statement; if there's no obsolete parts, there may be a problem."  In his appeal brief, Bush admits that he did not say during the meeting that proceeding with the proposed redesign violated any regulation or law.

After the meeting, Bush raised his concern in e-mails and conversations with Raytheon's management involved in the design review, including Matthew Smith, Bush's supervisor, and Ron Fowler, the CEC project manager.  According to Bush, as a result, in October Raytheon stopped the redesign plan, saving the government

resolution."  The costs of the engineering services was not to exceed $3,992,000.

[3]A downconverter converts high-frequency radio waves to low-frequency radio waves.

$400,000.

Bush alleges that, after the downconverter redesign was stopped, several Raytheon managers retaliated against him. In January 2003, Bush wrote a list of his accomplishments in his "performance screen," which included that he had "identified that the CEC downconverter did not require redesign saving over $400,000." Bush's supervisor, Smith, changed the notation to read that Bush had "identified an alternative low-cost solution to the CEC downconverter redesign" and deleted that Bush's actions had saved $400,000.

In May 2003, Smith prepared Bush's annual performance evaluation. Smith rated Bush overall as "Improvement Required," and noted several areas in which Bush needed to show improvement. In March 2004, Steve Crose, Bush's new supervisor, prepared Bush's annual performance evaluation. Crose rated Bush overall as "Meets Requirements." Bush contended that these two performance evaluations contained false information about his performance and omitted some of his accomplishments. Bush believes that these performance evaluations were retaliation for his complaints that the downconverter redesign violated TI30B.

In October 2004, Raytheon undertook a reduction in force, terminating sixty employees in Saint Petersburg, including Bush. Steve Park selected the employees for termination by ranking them within "decisional units" based on four categories.

Park ranked Bush with input from other Raytheon managers who worked with Bush. Bush was terminated because he received the lowest ranking in his decisional unit.

After his discharge, Bush applied for a position with another Raytheon division and for a position with an outside company. According to Bush, Raytheon's Saint Petersburg office shared the allegedly false 2003 and 2004 performance reviews with these prospective employers and failed to provide a favorable 2002 annual performance review, which resulted in Bush not getting the new positions. Bush subsequently was rehired by Raytheon on another project, which ended in September 2006.

**B.    District Court Proceedings**

Bush, represented by counsel, filed this action in Florida state court, asserting claims of retaliation under Florida's Whistleblower Act, defamation and tortious interference with business relationships. Raytheon removed the action to federal district court based on diversity of citizenship. Following extensive discovery, Raytheon moved for summary judgment. After Bush filed a summary judgment brief, Raytheon filed a motion to strike portions of Bush's response because Bush either had failed to provide citations to the record or had provided record citations that did not support the assertions made in the brief.

The district court granted the summary judgment motion and dismissed all of Bush's claims. Specifically, the district court concluded that: (1) as to the Florida Whistleblower Act claim, Bush failed to present evidence establishing several elements of a prima facie case; (2) as to the defamation claim, Raytheon was not liable for sharing information among its own managers and was protected by a qualified privilege for sharing information with prospective employers; and (3) as to the tortious interference claim, Bush had not opposed summary judgment.[4] The district court also terminated all pending motions as moot.[5] Bush filed this appeal.

## II. DISCUSSION

### A. Florida Whistleblower Act Claim

Under the Florida Whistleblower Act, "an employer may not take any retaliatory personnel action against an employee because the employee has . . . .

---

[4] On appeal, Bush does not challenge the ruling on his tortious interference claim.

[5] On appeal, Bush argues that the district court erred in granting summary judgment three days before his time to respond to Raytheon's motion to strike had expired under the local rules. Bush contends that he would have submitted additional evidence in opposition to the motion to strike. Bush appends this additional evidence, most of which is transcripts from a nine-day pre-suit arbitration between Bush and Raytheon in 2007, to a motion to supplement the record on appeal. Bush had these documents before he filed his response to Raytheon's motion for summary judgment and should have submitted them then if they were relevant to the summary judgment issues. Accordingly, Bush's motion to supplement the record on appeal is DENIED. Raytheon's motion to strike portions of Bush's reply brief is also DENIED. Raytheon's request to seal from public disclosure the document entitled "FRP1 Synthesizer Redesign," which was attached to Bush's motion to supplement the record on appeal, is DENIED.

[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). The legislative purpose of the Act is to "protect private employees who report or refuse to assist employers who violate laws enacted to protect the public." Jenkins v. Golf Channel, 714 So. 2d 558, 563 (Fla. 5th Dist. Ct. App. 1998). A "'[l]aw, rule, or regulation' includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4). The Act does not apply to violations of "public policy" because "the legislature did not intend to create a cause of action for what essentially amounts to an internal and personal dispute between [a plaintiff and his] employers. By the definition provided in section 448.101(4), the phrase 'law, rule or regulation' refers to enactments of a legislative or administrative forum." Forrester v. John H. Phipps, Inc., 643 So. 2d 1109, 1111-12 (Fla. 1st Dist. Ct. App. 1994); see also New World Commc'ns of Tampa, Inc. v. Akre, 866 So. 2d 1231, 1234 (Fla. 2d Dist. Ct. App. 2003) (concluding that an uncodified agency policy is not a rule for purposes of Florida's Whistleblower Act); Tyson v. Viacom, Inc., 760 So. 2d 276, 277 (Fla. 4th Dist. Ct. App. 2000) (concluding that a federal court injunction is not a law,

7

rule or regulation under Florida's Whistleblower Act).[6]

Here, Bush failed to present sufficient evidence from which a jury could conclude that he objected to a violation of a "law, rule, or regulation," as that phrase is defined by Florida law. Bush said to the Raytheon supervisors that the engineers needed to "look at [their] funding statement; if there's no obsolete parts, there may be a problem." TI30B is a funding statement delineating the terms of engineering services under a government contract. It is not a law, rule or regulation enacted by a legislative or administrative body.

Bush argues that when he objected to Raytheon violating the terms of TI30B he insinuated that Raytheon was violating the False Claims Act ("FCA"). Specifically, Bush contends that all of the Raytheon supervisors had received ethics training on contract compliance, were aware of the FCA, and "knew or should have known the redesign was illegal." Bush did not advance this argument in the district court. In any event, there is no evidence in the record that Bush explicitly objected to the redesign on FCA grounds. Indeed, Bush admitted that his

_____

[6]Although we apply Florida substantive law to retaliation claims under the Florida Whistleblower Act, we use the familiar McDonnell Douglas burden-shifting framework applied in Title VII retaliation claims to evaluate whether summary judgment was appropriate. See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000). Under this framework, when the plaintiff presents only circumstantial evidence of a retaliatory motive, the plaintiff bears the burden to present evidence of each element of his prima facie case. Id. If the plaintiff does so, the burden shifts to the employer to proffer a non-retaliatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that the reason is pretext for retaliatory conduct. Id.

objection to the violation of TI30B was "subtle."

Because TI30B is not a law, rule, or regulation within the meaning of the Florida Whistleblower Act, Bush has failed to establish his prima facie case. Thus, we do not address Bush's arguments about whether he presented evidence as to the other elements of a Florida Whistleblower Act claim or whether Bush presented evidence that Raytheon's legitimate, non-retaliatory reasons for its actions were pretext.

**B.   Defamation**

Under Florida law, to state a claim of defamation, a plaintiff must allege that "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." Valencia v. Citibank Int'l, 728 So. 2d 330, 330 (Fla. 3d Dist. Ct. App. 1999). When a corporation is accused of defamation, "statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication." Am. Airlines, Inc. v. Geddes, 960 So. 2d 830, 833 (Fla. 3d Dist. Ct. App. 2007).

In addition, an employer has a qualified privilege when the employer discloses information about a current or former employee to a prospective employer. See Fla. Stat. § 768.095. Under these circumstances, the employer is

immune "unless it is shown by clear and convincing evidence that the information disclosed by the former or current employer was knowingly false or violated any civil right of the former or current employee" under the Florida Civil Rights Act. Id. However, the qualified privilege may be destroyed upon a showing of express malice. See Nodar v. Galbreath, 462 So. 2d 803, 811 (Fla. 1984); Cape Publ'ns, Inc. v. Reakes, 840 So. 2d 277, 281 (Fla. 5th Dist. Ct. App. 2003). For express malice, "the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege." Nodar, 462 So.2d at 811. However, "[t]he incidental gratification of personal feelings of indignation is not sufficient to defeat the privilege where the primary motivation is within the scope of the privilege." Id. at 812.

Here, Bush points to Raytheon's distribution of Bush's allegedly false 2003 and 2004 performance reviews among some of its department/section managers in order to rank Bush during the reduction in force. This distribution does not constitute publication to a third party under Florida law and thus is not actionable. See Am. Airlines, 960 So.2d at 833.

Raytheon also sent the two allegedly false performance reviews to a prospective employer who requested them. As such, this publication is entitled to a qualified privilege. We also reject Bush's various arguments that his evidence

10

shows express malice.

**AFFIRMED.**